2006 ME 102

**Robert LOGAN**

v.

**CITY OF BIDDEFORD et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Nov. 29, 2005.

Decided: Aug. 17, 2006.

---

Durward W. Parkinson, Esq., Leah B. Rachin, Esq., Bergen & Parkinson, LLC, Kennebunk, for plaintiff.

Keith R. Jacques, Esq., Smith Elliott Smith & Garmey, P.A., Saco, (for City of Biddeford), Bruce M. Read, Esq., Shepard & Read, Kennebunk, (for McGoverns and Fergusons), for defendants & intervenors.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

SILVER, J.

[¶ 1] The City of Biddeford[1] appeals from a judgment entered in the Superior Court (York County, *Fritzsche, J.*) vacating the decision of the Biddeford Zoning Board of Appeals (ZBA), which vacated the issuance of a building permit to Robert Logan. The City contends that the Superior Court erred by deciding that the exception to the merger provision in the Shoreland and Resource Protection Zoning Ordinance applies to the lots at issue. We vacate the judgment of the Superior Court and affirm the decision of the ZBA.

## I. BACKGROUND

[¶ 2] Robert Logan owns four contiguous lots on Mile Stretch Road in Biddeford. Logan's property is located within the Coastal Residential zone, but also within the Shoreland and Resource Protection overlay zones as defined by the City's ordinance. All four lots, numbered 29, 30, 31, and 32 on the tax map, are nonconforming lots of record. There is a house on Lot 32 and an accessory garage on Lot 31, but Lots 29 and 30 are vacant.

[¶ 3] In December of 1999, Logan applied to the Biddeford Planning Board for a permit to construct a single-family residence on Lots 29 and 30. Based upon the language of the deed, which describes only the exterior perimeter of all four lots, the Planning Board denied Logan's application because it determined that the lots had been merged into a single lot that no longer enjoyed nonconforming status. Logan appealed the Planning Board's decision to the ZBA, and the ZBA affirmed. Logan appealed to the Superior Court (*Fritzsche, J.*), which also affirmed.

[¶ 4] Logan then appealed to this Court, and we vacated the judgment of the Superior Court, holding that the language of the deed was insufficient to deem the lots merged. *Logan v. City of Biddeford*, 2001 ME 84, ¶ 8, 772 A.2d 1183, 1185–86. Furthermore, we held that the factual findings were insufficient to answer the merger question based on the history of the par-

---

1. The City of Biddeford is joined by intervenor defendants, abutting landowners the Mc- Governs and Fergusons. The appellants will be referred to collectively as "the City."

cels and the zoning ordinance. *Id.* ¶ 10, 772 A.2d at 1186. Accordingly, we remanded the matter to the Superior Court, to be remanded to the ZBA. *Id.*

[¶ 5] Upon agreement of the parties, the ZBA remanded the matter to the code enforcement officer for a factual review and a determination of whether a permit should be granted. After Logan obtained all necessary permits, including a permit from the Department of Environmental Protection, the building inspector issued Logan a building permit on July 8, 2004. The intervenors appealed to the ZBA.

[¶ 6] The ZBA noted that both the Coastal Residential Zone ordinance (general ordinance) and the Shoreland and Resource Protection Zoning ordinance (Shoreland ordinance) contain clauses merging contiguous, nonconforming vacant or partially built lots of record in single or joint ownership. *See* Biddeford, Me., Code art. IV, § 5(D)(1) (2001), art. XIV, § 12(E)(3) (1999). The ZBA also noted that the Shoreland ordinance provides an exemption from the merger provision and an alternative minimum lot size requirement, but the general ordinance does not. *See id.* art. IV, § 5(D), art. XIV, § 12(E)(3). The ZBA determined that application of the Shoreland ordinance would allow Logan exemption from the merger requirement. The ZBA also determined that Logan's combined lots could not satisfy the dimensional standards of the general ordinance. *See* Biddeford, Me., Code art. V, § 6[A], tables B, C (2001). Accordingly, the ZBA concluded that the ordinances conflict. Because section 7 of the Shoreland ordinance provides, "[w]henever a provision of this Ordinance conflicts with or is inconsistent with another provision of this Ordinance or of any other ordinance, regulation or statute, the more restrictive provision shall control." *Id.* art. XIV, § 7, the ZBA concluded that the general

ordinance, as the more restrictive, controls. Thus, the ZBA concluded that the building inspector erred by granting Logan the permit.

[¶ 7] Pursuant to M.R. Civ. P. 80B, Logan appealed to the Superior Court. The court determined that the two merger provisions do not conflict because "they are designed for different situations." The court concluded that the Shoreland ordinance, as the more specific provision, applies, and vacated the ZBA's judgment. This appeal followed.

## II. DISCUSSION

[¶ 8] In a Rule 80B appeal, the Superior Court acts in an appellate capacity, and, therefore, we review the agency's decision directly. *Gensheimer v. Town of Phippsburg*, 2005 ME 22, ¶ 7, 868 A.2d 161, 163. "The interpretation of a local ordinance is a question of law, and we review that determination de novo." *Id.* ¶ 16, 868 A.2d at 166. "Although '[t]he terms or expressions in an ordinance are to be construed reasonably with regard to both the objectives sought to be obtained and the general structure of the ordinance as a whole,' we look first to the plain language of the provisions to be interpreted." *Id.* ¶ 22, 868 A.2d at 167 (citation omitted) (quoting *Peregrine Developers, LLC v. Town of Orono*, 2004 ME 95, ¶ 9, 854 A.2d 216, 219).

[¶ 9] The City argues that the merger provisions contained in the general ordinance and the Shoreland ordinance conflict because one would permit Logan to obtain the desired building permit and the other would not. Accordingly, the City contends that, pursuant to section 7 of the Shoreland ordinance, the general ordinance applies because it is more restrictive in its application. Logan argues that the Superior Court's conclusion was correct; the provisions do not conflict because they

are intended to apply in different situations.[2]

[¶ 10] We have previously held that a different result from the application of two separate ordinance provisions constitutes a conflict. *Two Lights Lobster Shack v. Town of Cape Elizabeth*, 1998 ME 153, ¶ 8, 712 A.2d 1061, 1063. In *Two Lights Lobster Shack*, the Two Lights Lobster Shack sought a permit to construct a basement beneath the restaurant to protect its structural integrity and add storage space. *Id.* ¶ 3, 712 A.2d at 1062. The Two Lights Lobster Shack was located in both the Residential A Zone and the Shoreland Performance Overlay Zone as defined by the Town's ordinance. *Id.* ¶ 2, 712 A.2d at 1062. Both the physical structure and the use were nonconforming. *Id.* Pursuant to the Residential A Zone:

> A non-conforming use of a building or structure shall not be extended, nor shall a non-conforming use or [sic] part of a building or structure be extended to other parts of the building or structure, unless in the opinion of the board, those parts were manifestly arranged or designed for such use prior to the enactment of this Ordinance or of any amendment making such use non-conforming.

*Id.* ¶ 4 n. 2, 712 A.2d at 1062–63 (alteration in original). The Shoreland Performance Overlay Zone also prohibited the expansion of a nonconforming use, but the definition of "expansion of use" did not include "the utilization of additional basement space." *Id.* ¶ 6, 712 A.2d at 1063.

Cape Elizabeth's zoning ordinance included a provision providing that the "more restrictive and specific provisions shall control" when provisions are inconsistent or in conflict. *Id.* ¶ 8, 712 A.2d at 1063. Because the Residential A Zone ordinance prohibited use of the proposed basement for storage, while the Shoreland Performance Overlay Zone ordinance would have permitted it, we held that a conflict existed and the most restrictive provision should apply. *Id.*

[¶ 11] To determine whether or not the ordinance provisions in the present case conflict, we must analyze and compare the results from their application. Both the general ordinance and the Shoreland ordinance permit construction upon vacant, nonconforming lots of record. Biddeford, Me., Code art. IV, § 5(A), art. XIV, § 12(E)(1). Both ordinances also contain similarly worded merger provisions, however. *Id.* art. IV, § 5(D)(1), art. XIV, § 12(E)(3). The general ordinance provides:

> D. *Contiguous lots, vacant or partially built.*
>
> 1. a. If two or more contiguous lots or parcels are in single or joint ownership of record as of the date of adoption of this ordinance; and
>
> b. If either or both of these lots do not individually meet the dimensional requirements of this ordinance or subsequent amendments; and
>
> c. If two or more of the lots are vacant or contain only an accessory structure;

---

**2.** In the alternative, Logan argues that pursuant to basic rules of statutory construction the Shoreland ordinance, as the more specific, must control, and that the ZBA's interpretation of the ordinances treats the merger exemption provision in the Shoreland ordinance as surplusage. We disagree. First, because the language of section 7 of the Shoreland ordinance is plain and unambiguous, we cannot resort to any other rule of statutory con-

struction to determine which ordinance applies. *See Merrill v. Sugarloaf Mountain Corp.*, 2000 ME 16, ¶ 11, 745 A.2d 378, 384. Second, the ZBA's interpretation of the ordinances does not render the merger exemption meaningless, and, therefore, it is not surplusage. *See Home Builders Ass'n of Me., Inc. v. Town of Eliot*, 2000 ME 82, ¶ 8, 750 A.2d 566, 570.

the lots shall be combined to the extent necessary to meet the dimensional standards.

*Id.* art. IV, § 5(D)(1). The Shoreland ordinance provides:

3. *Contiguous Lots—Vacant or Partially Built:* If two or more contiguous lots or parcels are in single or joint ownership of record at the time of or since adoption or amendment of this Ordinance, if any of these lots do not individually meet the dimensional requirements of this Ordinance or subsequent amendments, and if one or more of the lots are vacant or contain no principal structure the lots shall be combined to the extent necessary to meet the dimensional requirements.

*Id.* art. XIV, § 12(E)(3). As aforementioned, section 12(E)(3) of the Shoreland ordinance also provides an exemption from the merger requirement. The exemption applies if the lot, or lots, can accommodate a subsurface sewage disposal system that complies with the State's rules and, either individually or in combination, the lots contain a minimum of 100 feet of shore frontage and 20,000 square feet of area. *Id.*

[¶ 12] Applying the Shoreland ordinance, Logan would be exempted from the merger requirement because he is able to satisfy the requirements of article XIV, section 12(E)(3). First, the ZBA found that the city building inspector determined that Logan had "all necessary permits" to build on the property in question. Furthermore, the administrative record indicates that Logan submitted a design for a subsurface wastewater disposal system that conformed to the State's rules. Second, although neither the ZBA nor the Superior Court explicitly made a finding as to how many square feet or how much shore frontage Lots 29 and 30 contain when combined, it was implicit in the ZBA's judgment that Logan could obtain the permit

through application of the Shoreland ordinance. Moreover, the administrative record provides evidence that, when combined, Lots 29 and 30 contain more than 70,000 square feet and 200 feet of shore frontage. Accordingly, application of the Shoreland ordinance would result in approval of Logan's permit application.

[¶ 13] In contrast to the Shoreland ordinance, application of the general ordinance does not result in approval of Logan's permit application. Pursuant to section 5(D)(1) of the general ordinance, Logan's lots must be combined to the extent necessary to meet the dimensional standards. *Id.* art. IV, § 5(D)(1). Based on the soil profile of Logan's lots, the general ordinance requires a minimum of 80,000 square feet for single-family residential use. *Id.* art. V, § 6[A], tables B, C. Logan already has a single-family residence on Lot 32, therefore, all four lots must contain a combined area of at least 160,000 square feet before he can construct a second residence on Lots 29 and 30. Because Logan's four lots only contain a combined area of 104,000 square feet, application of the general ordinance prohibits him from building a second residence on any combination of Lots 29, 30, 31, and 32.

[¶ 14] Application of the general ordinance and the Shoreland ordinance achieve different results. Accordingly, the general ordinance and the Shoreland ordinance conflict. *See Two Lights Lobster Shack,* 1998 ME 153, ¶ 8, 712 A.2d at 1063. Because application of the general ordinance results in a denial of Logan's permit application, that ordinance is the more restrictive provision as applied to Logan. *See id.* Therefore, pursuant to the plain language of the Shoreland ordinance, the general ordinance controls and the ZBA's denial of Logan's permit application was required by the ordinance.

The entry is:

The judgment of the Superior Court is vacated. Remanded to the Superior Court for the entry of an order affirming the decision of the Zoning Board of Appeals.