2011 ME 6

**TENANTS HARBOR GENERAL STORE, LLC**

v.

**DEPARTMENT OF ENVIRONMENTAL PROTECTION.**

Supreme Judicial Court of Maine.

Argued: Sept. 15, 2010.

Decided: Jan. 6, 2011.

Clifford H. Goodall, Esq. (orally), Dyer Goodall and Denison, P.A., Augusta, ME, for Tenants Harbor General Store, LLC.

Janet T. Mills, Attorney General, Mary M. Sauer, Asst. Atty. Gen. (orally), Augusta, ME, for Department of Environmental Protection.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

SAUFLEY, C.J.

[¶ 1] The question presented by this appeal is whether a regulatory agency may disregard the "grandfathered" status of a facility by applying unannounced rules or criteria not promulgated by statute or regulation. We conclude that it may not, and we vacate the judgment of the Superior Court (Kennebec County, *Marden, J.*), which affirmed the decision of the Department of Environmental Protection, declining to recognize the grandfathered status of the underground fuel tanks at a convenience store in Tenants Harbor.

## I. BACKGROUND

[¶ 2] In February 2007, Paul Volle contracted to purchase property in Tenants Harbor that included a convenience store with gasoline pumps. Because leaks had been detected between the inner and outer walls of the underground gasoline storage tanks, the seller arranged to have the tanks removed before the completion of the sale. After notice to the Department of Environmental Protection, the tanks were removed on May 16, 2007, with no indication of external leaks.[1]

[¶ 3] Volle intended to replace the tanks after the purchase. The tanks that were removed had been installed originally before September 30, 2001—the date after which the Legislature's new limitations on the location of underground oil storage facilities began to apply. *See* P.L.2001, ch. 302, § 1 (effective Sept. 21, 2001) (codified at 38 M.R.S. § 563–C (2007)) (restricting an underground oil storage facility's proximity to public and private water supplies).[2] A facility where new tanks were installed within twelve months after removing tanks installed before September

---

1. Some remediation was done to remedy contamination resulting from overfills.

2. Chapter 3, subchapter 2–B of Title 38, currently codified at 38 M.R.S. §§ 561 to 570–M (2010), has been amended in various ways since 2007. In this opinion, we interpret the statutes and regulations as they existed at the time that the contested registration was filed, and we do not discuss the statutes and regulations as they are now codified.

30, 2001, would constitute a replacement facility exempt from the newer restrictions. 38 M.R.S. § 563–C (emphasis added);[3] *see* 3 C.M.R. 06 096 691–4 § 3(OO) (2007) (defining a "replacement facility" to include a facility in which any major component of a facility—including a tank—was replaced). In contrast, "[a]ll underground oil storage facilities and tanks that ha[d] been, or [were] intended to be, taken out of service *for a period of more than 12 months*," were considered abandoned, such that new restrictions on placement would thereafter apply. 38 M.R.S. § 566–A(1) (2007) (emphasis added). Accordingly, unless the owner took affirmative steps to formally close the facility, *see* 3 C.M.R. 06 096 691–32 § 11(A)(1) (2007), the tanks at the Tenants Harbor convenience store would be "grandfathered"; that is, they would not be subject to the new limitations on tanks' proximity to water supplies, unless they were taken out of service for more than twelve months. *See* 38 M.R.S. §§ 563–C(2), 566–A(1).

[¶ 4] Other than notifying the Department of the removal of the tanks using the Department's form, the owner took no action that indicated an intention to permanently abandon and close the facility. Indeed, after the seller had the tanks removed, but before the sale of the property, Volle contacted the Department of Environmental Protection to confirm his understanding that the tanks could be replaced without meeting the newer restrictions, as long as the tanks were not "out of service for more than 12 consecutive months." 38 M.R.S. § 563–C(2); *see id.* § 566–A(1).

[¶ 5] On June 5, 2007, the purchase was completed and the property was deeded to Tenants Harbor General Store, LLC, which was owned by Volle. The LLC obtained the required municipal approval to install new tanks and submitted a registration form for underground oil and petroleum products storage tanks to the Department with the required fee on May 2, 2008. *See* 38 M.R.S. § 563 (2007); *see also* 3 C.M.R. 06 096 691–8 to –10 § 4 (2007).

3. Section 563–C provided, in relevant part:

**1. Prohibition.** Except as provided in this section, *after September 30, 2001*, a person may not register, install, or cause to be installed, a new underground oil storage facility, referred to in this section as a "facility," that is:

**A.** Within the source water protection area of a public drinking water supply mapped by the Department of Health and Human Services prior to the registration or installation of the facility, or *within 1, 000 feet of the public water supply*, whichever is greater; or

**B.** *Within 300 feet of a private water supply* inexistence at the time the facility owner applied to register the facility.

. . . .

**2. Exemptions.** *The prohibitions in subsection 1 do not apply to:*

**A.** *Replacement or expansion of a facility registered and installed on or before September 30, 2001,* provided the replacement or expansion occurs on the same property and the owner or operator continues to pay the annual registration fee as required under section 563. Failure to pay the annual fee disqualifies a facility from being considered exempt under this section . . .

. . . .

Notwithstanding paragraphs A and B, the prohibitions in subsection 1 apply if a facility has been out of service for more than 12 consecutive months unless, as provided in rules adopted under section 566–A, the commissioner has approved an application allowing the facility to remain temporarily out of service for a longer period.

38 M.R.S. § 563–C (2007) (emphasis added) (repealed by P.L.2007, ch. 569, § 3 (effective July 18, 2008)). By adopting regulations, the Department imposed additional restrictions on locating facilities near water, *see* 3 C.M.R. 06 096 691–5 to –8 § 3–A (2007), but the relevant restrictions are those set forth by statute rather than by regulation.

[¶ 6] The Department, however, declined to recognize the grandfathered status of the tanks. It returned the registration form to the LLC with a letter, dated May 13, 2008, indicating that the registration was incomplete and would not be accepted. The Department concluded that the registration was for a new facility, not for a replacement facility, because the former owner had "closed" the facility.[4] The Department would authorize the installation of underground tanks on the site only as a new installation subject to the restrictions on tank placement, not as a replacement of an existing facility. The letter indicated that the Department would apply the new law to the LLC's application and would not authorize the LLC to install the replacement tanks unless the LLC obtained a variance from the restrictions on the tanks' proximity to public or private water supplies. *See* 38 M.R.S. § 563–C(3) (authorizing the Commissioner to grant variances from the location restrictions). Seeking such a variance would require a new application process, which would generate additional costs and delays for the LLC, without any certainty of the outcome.

[¶ 7] The LLC sought judicial review of the Department's denial of its registration by filing a complaint in the Superior Court pursuant to 5 M.R.S. § 11001 (2010), 38 M.R.S. § 346(1) (2007), and M.R. Civ. P. 80C seeking a judicial determination that the Department had erred in declining to accept the grandfathered status of the replacement tanks. In addition to its appeal from the Department's decision, the LLC sought equitable relief. The LLC moved for the court to take additional evidence regarding both the administrative appeal and a claim of equitable estoppel arising from the Department's advice to Volle on the telephone that he could install replacement tanks within twelve months after removal of the old tanks. The court (*Jabar, J.*) granted the motion for the purpose of taking evidence on the equitable estoppel claim only and held an evidentiary hearing in March 2009. After briefing by the parties, the court (*Marden, J.*) entered a judgment in favor of the Department on both the administrative appeal and the equitable estoppel claim. The LLC appeals

---

4. By statute, an underground oil storage facility could be abandoned in defined circumstances:

> All underground storage facilities and tanks *that have been, or are intended to be, taken out of service for a period of more than 12 months* shall be properly abandoned by the owner or operator of the facility or tank. . . . All abandoned facilities and tanks shall be removed, except where removal is not physically possible or practicable. . . .

38 M.R.S. § 566–A(1) (2007) (emphasis added). The Department's associated regulations also include the twelve-month limitation, though they speak of the *closure* of facilities, part of which involves abandonment:

> The owner or operator of an underground oil storage facility or tank *that has been or is intended to be out-of-service for a period of more than 12 months* must close the facility or tank in accordance with this section unless the tank owner has received written permission from the commissioner to remain temporarily out of service in accordance with the requirements of subsection B below. *Closure must include . . . [p]roper abandonment of tanks*, piping and other facility components. . . .

3 C.M.R. 06 096 691–32 § 11(A)(1)(a) (2007) (emphasis added). The regulations provided that one way to properly abandon a facility was "by removal." 3 C.M.R. 06 096 691–33 to –34 § 11(C) (2007). Accordingly, although it was possible for an owner who *intended* to close a facility to do so consistent with rules and regulations by removing the tank and related piping or equipment, it did not follow that removal of a tank necessarily constituted the closure of a facility. If the Legislature or the Department intended for the removal of a tank, without written notice of the intent to replace it, to constitute the closure of a facility, different statutory or regulatory measures would have to have been promulgated.

from the Superior Court's judgment on both counts.[5]

## II. DISCUSSION

■ [¶ 8] When the Superior Court, acting in its appellate capacity, reviews a state agency's decision, we review the agency's decision directly for errors of law, findings not supported by the evidence, or an abuse of discretion. *Uliano v. Bd. of Envtl. Prot.*, 2009 ME 89, ¶ 12, 977 A.2d 400, 407. In reviewing statutory construction, we defer to an agency's interpretation of a statute administered by that agency and will uphold that interpretation "unless the statute plainly compels a contrary result." *See FPL Energy Me. Hydro LLC v. Dep't of Envtl. Prot.*, 2007 ME 97, ¶ 11, 926 A.2d 1197, 1201 (quotation marks omitted).

■ [¶ 9] In interpreting a statute, we first look to its plain meaning to discern the real purpose of the legislation. *Id.* ¶ 12, 926 A.2d at 1201. We construe the statute based on the plain, common, and ordinary meaning of its terms, and we avoid absurd, inconsistent, illogical, or unreasonable results. *Id.; Murphy v. Bd. of Envtl. Prot.*, 615 A.2d 255, 258 (Me.1992). To discern the plain meaning, we take into account the structure of the statute and the placement of the statute in context to generate a harmonious result. *See FPL*

*Energy*, 2007 ME 97, ¶ 12, 926 A.2d at 1201; *Murphy*, 615 A.2d at 258.

■ [¶ 10] Using these rules of statutory construction, we examine the statute that was in place at the time that the LLC filed its registration. At that time, section 563–C(2) exempted from siting requirements the replacement of "a facility registered and installed on or before September 30, 2001" if the facility had not "been out of service for more than 12 consecutive months," and the replacement facility was installed "on the same property and the owner or operator continue[d] to pay the annual registration fee." 38 M.R.S. § 563–C(2). The relevant statutes did not include a definition of the term "replacement." *See* 38 M.R.S. § 562–A (2007) (definitions). Pursuant to the definitions provided in the Department's regulations, however, the replacement of any major component of an underground oil storage facility—including a tank—was considered to be a "replacement facility." *See* 3 C.M.R. 06 096 691–4 § 3(OO). This is distinguished from a "new facility" to which the facility placement restrictions of 38 M.R.S. § 563–C(1) applied. *See also* 3 C.M.R. 06 096 691–5 § 3–A(A) (2007) (restricting new installations' proximity to water resources).

[¶ 11] Therefore, by law, if a proposed installation constituted a replacement of a facility that had been out of service for less

---

5. Although the parties have not raised the issue, we do consider whether the administrative decision from which the LLC appeals constituted "final agency action" by the Department, such that the Superior Court had jurisdiction to review the determination. *See* 5 M.R.S. § 11001(1) (2010); *see also* 38 M.R.S. § 346(1) (2007); *Raynes v. Dep't of Corr.*, 2010 ME 100, ¶ 10, 5 A.3d 1038, 1040. A party was not required to appeal to the Board of Environmental Protection before filing a judicial appeal from a final permitting decision of the Commissioner. 38 M.R.S. § 344(2–A) (2007) (later amended by P.L.

2009, ch. 615, Pt. E, § 3 (effective July 12, 2010)). Here, although a member of the Commissioner's staff—not the Commissioner himself—"return[ed] the application to the applicant with the reasons for nonacceptance specified in writing," 38 M.R.S. § 344(1) (2007), the Commissioner was statutorily authorized to "delegate duties assigned to the commissioner under [Title 38] to staff of the department," 38 M.R.S. § 341–A(3)(C) (2007). We therefore consider the letter decision from the Commissioner's staff to constitute reviewable final agency action.

than twelve months, the registrant did not have to meet the siting requirements applicable to the installation of a *new* underground storage facility. *See* 38 M.R.S. § 563–C(2); *see also* 38 M.R.S. § 566–A(1). Replacement tanks could be registered and installed in the location of the previous tanks. *See* 38 M.R.S. § 563–C(2).

[¶ 12] Notwithstanding the LLC's submission of a registration and the required fee within twelve months after the prior owner removed the grandfathered tanks, the Department argues that the LLC's registration was for a *new* facility, not a *replacement* facility. The Department contends that the LLC's registration was for a new facility because the prior owner signed a document notifying the Department that she was abandoning the facility, *see* 38 M.R.S. § 566–A(1), and neither the prior owner nor the LLC provided the Department with notice in writing of the intention to replace the removed tanks.

[¶ 13] The Department does not, however, identify any applicable statute or rule that required a registrant to provide notice of the intent to replace an existing facility. From an examination of the statutory and regulatory language, it is clear that the *timing* of the subsequent installation—not the provision of any notice—determined whether an owner proposed a "replacement" facility. *See* 38 M.R.S. §§ 563–C(2), 566–A(1); 3 C.M.R. 06 096 691–32, –33 § 11(A)(1), (C)(1) (2007). If the new equipment was registered and installed within twelve months after the removal of the "facility registered and installed on or before September 30, 2001," it was classified as a replacement. 38 M.R.S. § 563–C(2); *see id.* § 563–C(1). If it was registered and installed more than twelve months after the removal of the old equipment, the old facility was deemed abandoned and the proposed installation was classified as a new installation. *See* 38

M.R.S. § 566–A(1); *see also* 3 C.M.R. 06 096 691–32 § 11(A)(1).

[¶ 14] As with the statutes and regulations, none of the Department's forms indicated any requirement that a registrant provide written notice of the intent to replace a facility that was being removed. Rather, the form that the previous owner was required to fill out before removal of the tanks was entitled, *"NOTICE OF INTENT TO ABANDON (REMOVE) AN UNDERGROUND OIL STORAGE FACILITY."* The form, which the Department concedes was its *only* form for tank removal, provided no means for the owner to indicate that the facility—far from being abandoned—was going to be upgraded with replacement tanks for continued use by a new owner.

[¶ 15] Although the Department argues that the LLC could also have learned of the Department's practice of requiring written notice by seeking advice from an attorney, neither an applicant nor an advocate would have a basis *in law* to determine that notice was required. Statutes and regulations, not unwritten agency customs and practices, must inform registrants and their attorneys of what is required to register a facility. In the absence of such statutory and regulatory guidance, we cannot conclude that the LLC or the prior owner were required to provide prior notice to the Department of the intention to replace the removed underground gasoline storage tanks.

[¶ 16] Because laws applicable to this project focused on the time limitation, and because they did not require that a registrant provide notice of the intent to replace equipment that was being removed, the Department's requirement of such notice was contrary to the statutory and regulatory law. Although we normally defer to a state agency's interpretation of a statute, the statutory language at issue

here compels a contrary interpretation. *See FPL Energy,* 2007 ME 97, ¶ 11, 926 A.2d at 1201.

[¶ 17] By obtaining municipal approval and submitting its registration and the required fee within twelve months after the removal of the old, grandfathered tanks, the LLC complied with the statutory and regulatory requirements for registration of the replacement tanks. The registration should have been accepted. We vacate the Superior Court's judgment and remand for the court to remand the matter with instructions that the Department accept the LLC's registration of tanks to replace the grandfathered tanks.

[¶ 18] We do not review the equitable estoppel claim because our conclusion on the administrative appeal renders that issue moot. *See Me. Sch. Admin. Dist. No. 37 v. Pineo,* 2010 ME 11, ¶ 8, 988 A.2d 987, 990–91.

The entry is:

Judgment vacated. Remanded for the Superior Court to remand to the Department of Environmental Protection for further proceedings consistent with this opinion.