STATE OF MAINE
PISCATAQUIS, ss.

SUPERIOR COURT
CIVIL DIVISION
DOCKET NO. AP-17-001

PETER STEVENS,  )
)
Petitioner,  )
)
v.  )
)
)
BOARD OF TRUSTEES FOR THE  )
MAINE PUBLIC EMPLOYEES  )
RETIREMENT SYSTEM,  )
)
Respondent.  )

**Order on Rule 80C Appeal**

Before the Court is Petitioner Peter Stevens' appeal, brought pursuant to M.R. Civ. P. 80C, of the Board of Trustees for the Maine Public Employees Retirement System ("MPERS") decision denying Petitioner disability retirement benefits. Petitioner appeals MPERS' December 8, 2016 adoption of the September 1, 2016 findings of the Hearing Officer, who determined that Petitioner failed to prove, by a preponderance of the evidence, that it was impossible for Petitioner to perform the duties of his employment position under 5 M.R.S. § 17921. Petitioner argues on appeal that he successfully proved by a preponderance of the evidence that his myofascial pain made it impossible for him to perform the duties of his position as a transportation worker. However, the Court does not find that Respondent committed any errors of law, abuses of discretion, or clear errors of fact. Accordingly, the Court **AFFIRMS** the underlying MPERS decision.

David Simonds, Esq
15 Columbia Street
Bangor, ME 04401

Received & Filed
APR 11 2018
Piscataquis County
Clerk's Office

1

Christopher L. Mann, Esq
6 State House Station
Augusta, ME 04333-0006

BACKGROUND

Petitioner worked full time as a transportation worker at the Maine Department of Transportation ("DOT"). (R. 4.4.) His job duties included operating dump trucks, a front end loader, backhoe, and motor grader, as well as fixing catch basins, cutting brush, and plowing snow in the winter. (*Id.*) On his June 12, 2014 application for disability retirement benefits, Petitioner listed polyarthropathy and arthritis as conditions for which he was applying for benefits, as well as the fact that his body was "wore out from years of labor and injuries." (R. 4.7.)

Hearing was held on March 9, 2015. (R. 34.1.) On June 8, 2015, a Deputy Executive Director of MPERS affirmed two decisions: 1) an August 29, 2014 decision finding that medical evidence failed to establish the clinical existence of polyarthropathy and that no functional limitations made it impossible for Petitioner to perform the duties of his position; and 2) a December 8, 2014 decision denying Petitioner's application on the additional basis of myofascial pain, polyarthritis and chronic pain syndrome. (*Id.*) On November 13, 2015, a Hearing Officer issued a Recommended Decision concluding that Petitioner proved by a preponderance of evidence that there are functional limitations associated with the condition of myofascial pain; did not prove that medical evidence established the existence of the condition of chronic pain syndrome; and did not prove that there are functional limitations associated with the condition of mobility restrictions resulting from Petitioner's broken wrist. (R. 41.12.

The Hearing Officer's November 13, 2015 decision was partly based on the findings of the Medical Board, which reviewed the record on August 21, 2014, December 4, 2014, and June 4, 2015. (R. 49.14.) The Medical Board concluded that multiple x-rays of Petitioner's wrist did not support the existence of polyarthritis. (*Id.*) The Medical Board also found that there were no

2

functional limitations associated with Petitioner's previously broken wrist and that the objective medical evidence did not support the existence of chronic pain syndrome. (R. 49.15.)

On October 25, 2016, the same Hearing Officer issued a Recommended Final Decision concluding that Petitioner failed to prove by a preponderance of the evidence that functional limitations associated with myofascial pain made it impossible for him to perform the essential functions of his job as a transportation worker with the DOT. (R. 50.6.) This decision noted that two written performance evaluations and interviews with Petitioner's supervisors stated that Petitioner was meeting job expectations. (*Id.*) The decision also found insufficient objective evidence in the record proving that even if it was impossible for Petitioner to perform his job, it was because of myofascial pain. (*Id.*) The Hearing Officer again considered the findings of the Medical Board, which noted that Petitioner's myofascial pain syndrome was not based on objective medical findings. (R. 49.3.) On December 8, 2016, the Board of Trustees affirmed the Hearing Officer's decision without amendment. (R. 50.2.)

## STANDARD OF REVIEW

"When the Superior Court, in its appellate capacity, reviews a state agency's decision, the Court reviews the agency's decision directly for errors of law, findings not supported by the evidence, or an abuse of discretion." *Tenants Harbor Gen. Store, LLC v. Dep't of Envtl. Prot.*, 2011 ME 6, ¶ 8, 10 A.3d 722. "A party seeking to vacate an agency decision bears the burden of persuasion on appeal." *Anderson v. Me. Pub. Emps. Ret. Sys.*, 2009 ME 134, ¶ 3, 985 A.2d 501. "When an agency concludes that the party with the burden of proof failed to meet that burden, we will reverse that determination only if the record compels a contrary conclusion to the exclusion of any other inference." *Kelley v. Me. Pub. Emps. Ret. Sys.*, 2009 ME 27, ¶ 16, 967

3

A.2d 676. "It is not our function…in reviewing an administrative decision, to undertake a fresh determination of credibility." *See Merrow v. Maine Unemployment Ins. Comm'n*, 495 A.2d 1197, 1201 (Me. 1985). The Court will not disturb an agency decision unless the record compels a contrary result. *McPherson Timberlands v. Unemployment Ins. Comm'n*, 1998 ME 177, ¶ 6, 714 A.2d 818.

It is the final decision of the Board, and not of the hearing officer, that is subject to review. *See Kelley*, 2009 ME 27, ¶ 27, 967 A.2d 676. "As the unsuccessful party before the Board, [Petitioner] has the burden to show *more* than that there was competent evidence to support her position; [he] has to demonstrate that there was *no competent evidence* to support the Board's findings." *Id.* (emphasis in original) (internal quotations omitted).


ANALYSIS

5 M.R.S. § 17924 governs the allocation of disability retirement benefits and provides that "a member qualifies for a disability retirement benefit if disabled while in service." A member is "disabled" if the member is mentally or physically incapacitated under the following conditions:

A. The incapacity is expected to be permanent;
B. That it is impossible to perform the duties of the member's employment position;
C. After the incapacity has continued for 2 years, the incapacity must render the member unable to engage in any substantially gainful activity for which the member is qualified by training, education or experience; and
D. The incapacity may be revealed by examinations or tests conducted in accordance with section 17926.

5 M.R.S. § 17291(1). Thus, "[t]o qualify for the benefits, [Petitioner] was required to prove that [he] has a mental or physical incapacity that (1) is expected to be permanent, and (2) makes it impossible to perform the duties of [his] employment position." *Jalbert v. Me. Pub. Emps. Ret.*

4

*Sys.*, 2017 ME 69, ¶ 11, 158 A.3d 940. Petitioner had the burden of persuading the Board by a preponderance of the evidence that he was disabled within the meaning of the statute. *See Douglas v. Bd. of Trs.*, 669 A.2d 177, 179 (Me. 1996).

In this case, Petitioner contends that the Board erred by adopting the Hearing Officer's determination that Petitioner failed to prove it was impossible to perform the duties of his employment position. To support this position, Petitioner suggests that the Board was required to define the word "impossible" in 5 M.R.S. § 17921. Petitioner also points to the Hearing Officer's November 13, 2015 finding that there are functional limitations associated with myofascial pain.

First, the Court rejects Petitioner's argument that the Board was required to define the word "impossible." "When a party to an agency adjudicative proceeding raises a question about a statute's meaning or scope and the statute is one administered by the agency, the agency must interpret it if the interpretation is necessary to the adjudicative decision." *Cobb v. Bd. of Prof'ls Licensure*, 2006 ME 48, ¶ 24, 896 A.2d 271. "Agencies are not required to promulgate rules defining every statutory term that might be called into question. They are expected to apply statutes within their expertise as cases arise." *Id.* Here, the word "impossible" is not ambiguous. "Impossibility" means "[t]he fact or condition of not being able to occur, exist, or be done," or "a fact or circumstance that cannot occur, exist, or be done." *Impossibility*, BLACK'S LAW DICTIONARY (9th ed. 2009). In a contracts setting, "[i]ncreased or unexpected difficulty and expense do not usu[ally] qualify as an impossibility and thus do not excuse performance." *Id.* Thus, any expanded definition of "impossible" by the Hearing Officer or Board would have been unnecessary to the adjudicative decision in this case.

Second, the Court rejects the argument that the November 13, 2015 finding that there are functional limitations associated with myofascial pain required the Hearing Officer to then find

5

that it was impossible for Petitioner to perform the duties of his job. Petitioner points to the Hearing Officer's conclusion that functional limitations of myofascial pain syndrome may include "difficulty kneeling and crawling, difficulty holding and operating tools and equipment, difficulty climbing in and out of trucks and equipment, and difficulty sitting and standing for lengthy periods of time." (R. 50.18.) Nonetheless, the conjunction of these physiological difficulties do not render the tasks at issue impossible. Evidence that "because of his physical condition [Petitioner] sought to perform only the less taxing aspects of his position" does not entail that "it had become impossible for him to perform the duties" of his job. *Douglas*, 669 A.2d at 179-180.

Moreover, in an Employer Interview, Petitioner's supervisor Robert Davis confirmed a performance appraisal stating that from July of 2012 to July of 2013, Petitioner was meeting the expectations of his position. (R. 4.11.) Davis stated that Petitioner continued to meet performance expectations at the time of the interview, and had not requested any job modifications. (*Id.*) These expectations included erect swing staging, operate the oxyacetylene or propylene cutting equipment and arc welder, and rehabilitate concrete structures as a bridge worker. (R. 4.10.) Additionally, a July 30, 2014 interview with Petitioner's supervisor Randy Gray reveals that Petitioner was "a great worker, who would never say anything about his difficulties," although he was "slowing down." (R. 4.13.) Mr. Gray confirmed that Petitioner satisfied the active requirements of his job, including operation of the lead abatement and paint equipment, climbing the four wheel drive loader, inspecting the hoppers, and climbing ladders of more than two to three steps. (R. 4.13.) These positive evaluations from Petitioner's supervisors show that while Petitioner may have experienced difficulties in performing his job, he was in fact

6

performing the duties of his job satisfactorily, which demonstrates that it was not impossible for him to perform his job.

Petitioner's brief relies heavily on the medical testimony of Dr. Challa Reddy, Petitioner's primary care physician, to prove that it was impossible for Petitioner to perform his job. Included in the record is a letter written by Dr. Reddy stating that Petitioner has "multiple joint pains secondary to polyarthritis and myofascial pain." (R. 17.47.) Thus, Reddy wrote, Petitioner "is not able to do any significant physical activities due to increasing amount of pain," but "is suitable to do a desk job without putting to[o] much pressure on his joints and muscles." (*Id.*) The Hearing Officer considered this evidence, as well as other evidence from Petitioner's health care providers, but gave it limited weight. Regarding Dr. Reddy's medical evaluations, the Hearing Officer found that Reddy "consistently identified conditions other than myofascial pain as the reason" for Petitioner's difficulties. (R. 50.6.) Furthermore, the Hearing Officer had previously found that Dr. Reddy "offered no explanation or description of the specific limitations that prevent [Petitioner] from doing his job." (R. 50.17.) The Hearing Officer also gave the evaluations of Dr. Henry Jao and Dr. Dannel Starbird, other health care providers of Petitioner, limited weight due to inconsistent causal explanations of Petitioner's purported functional limitations. (*Id.*) ("Dr. Jao identified osteoarthritis of the right knee and a right quadriceps strain, not myofascial pain, as the reason…Dr. Starbird…believes that psychological conditions, including a major depressive order…are responsible."). "Hearing officers may accept, reject or determine the amount of weight to be given any information offered into evidence, including, but not limited to, medical evidence submitted by any of the parties to the appeal." *Jalbert*, 2017 ME 69, ¶ 15, 158 A.3d 940 (quoting 5 M.R.S. § 17106-A(3)). Thus, the Court may not substitute its judgment for the Hearing Officer's on the factual question of the extent of Petitioner's functional

7

limitations. *See also Anderson v. Me. Pub. Emps. Ret. Sys.*, 2009 ME 134, ¶ 27, 985 A.2d 501 ("[t]he court shall not substitute its judgment for that of the agency on questions of fact.").

Based on the record evidence of Petitioner's recent satisfactory job performances based on written evaluations and supervisor interviews, the Board could have concluded, as it did, that despite his muscle and joint pain, Petitioner could continue to perform his job duties, albeit at a slower pace and perhaps with a greater level of assistance than in previous stages of Petitioner's career. Difficulty does not amount to impossibility. Because there is competent evidence to support the Board's conclusion, the Court may not overturn the Board's underlying decision.

The entry is:

1. The Board of Trustees for the Maine Public Employees Retirement System decision is **AFFIRMED**.
2. The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated: 4/11/18

William R. Anderson
Justice, Maine Superior Court

8