STATE OF MAINE
LINCOLN, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-20-6

29 MCKOWN LLC and
CHANDLER WRIGHT,

Plaintiffs,

v.

TOWN OF BOOTHBAY HARBOR,

Defendant

and

HARBOR CROSSING, LLC,

Party-in-Interest

)
)
)
)
)
)
)
)
) **DECISION AND ORDER**
)
)
)
)
)
)
)
)
)

## INTRODUCTION

The matter before the court is petitioners 26 McKown, LLC, ("29 McKown") and Chandler Wright's Rule 80B appeal. Petitioners are appealing the Town of Boothbay Harbor's (the "Town") Code Enforcement Officer's ("CEO") decision to lift a stop work order issued to party-in-interest Harbor Crossing, LLC ("Harbor Crossing"). The Boothbay Harbor Board of Appeals ruled in favor of the CEO, which led to this 80B appeal. For the following reasons, the Board of Appeals decision is affirmed.

## BACKGROUND

29 McKown is the owner of real property located at 29 McKown Street, Boothbay Harbor, Maine. (Compl. ¶ 1.) Mr. Wright is the Personal Representative for the Estate of Constance Wright, which is the owner of real property located at 35 McKown Street, Boothbay Harbor, Maine. (*Id.* ¶ 4.) Harbor Crossing is the owner of property located at 14 Todd Avenue, Boothbay Harbor, Maine. (*Id.* ¶ 7.) Plaintiffs' properties both abut Harbor Crossing's property. (*Id.* ¶ 8.)

1

On March 26, 2020, Harbor Crossing wrote to the Town CEO, Geoff Smith, to apply for a building permit to renovate the building located on Harbor Crossing's property. (R. 60.) The work requested was described as "New roof, exterior doors, siding, trim, new flooring, interior doors, paint, heat pump." (*Id.*) On June 2, 2020, the CEO granted the application under permit #20-37. (R. 61.)

On June 5, 2020, Dennis Hilton emailed the CEO on behalf of Harbor Crossing to inquire about demolishing the entire structure and building a new one. (R. 142.) Harbor Crossing submitted a new building permit application on the same day, requesting permission to perform work described as "demolish existing structure, pour new foundation, expand main portion from 20x20 to 22x22, new roof pitch, new height of 16'." (R. 62.) On June 8, 2020, the CEO granted this application under permit #20-41. (R. 63.)

The Town never published notice of either building permit, nor were 29 McKown or Mr. Wright directly notified. (R. 211-12.) Petitioners claim that Thomas Myette, Jr., the sole member of 29 McKown, noticed Harbor Crossing appeared to be constructing a new, larger building on its property in September of 2020.[1] Mr. Myette complained to the CEO, who inspected the property on September 17, 2020. (R. 67.) The CEO issued a Stop Work Order on September 17, along with a letter explaining his reason for doing so: "Due to a deviation from the building design permitted by this office on June 8, 2020 under building permit 20-41 I am issuing a Stop Work Order." (R. 66.) The CEO required Harbor Crossing to submit a revised plan showing the building actually being constructed. (*Id.*) The letter clarified that the Stop Work Order "will remain in effect until

---

[1] The other parties in this case suggest that it is implausible that Mr. Myette did not notice the ongoing construction on Harbor Crossing's property until September. The court's opinion does not turn on this fact either way, so the court has elected to include it only for context.

2

such time as the required material is submitted and the Code Enforcement Officer determines your permit 20-41 remains valid." (*Id.*)

Harbor Crossing complied with the CEO's requirements and submitted additional documentation on September 17 and September 25, 2020. (R. 131-44.) These revised plans depicted a building with dimensions of 22'x24', with a height of 23' 5/8". (R. 70-72.) The roof line on these plans had been rotated 90 degrees from the roof line of the previous building and now included dormers. (R. 73.) The CEO reviewed these documents and lifted the Stop Work Order by letter dated September 25, 2020. (R. 69.) The CEO did not issue a new or amended building permit.

29 McKown and Mr. Wright filed an appeal of the CEO's decision to release the Stop Work Order with the Boothbay Harbor Board of Appeals on October 22, 2020. (R. 8-22.) Their argument on this appeal was that the CEO decision to release the Stop Work Order authorizing the construction of a new commercial building required site plan review by the Planning Board pursuant to Section 170-61(A) of the Land Use Ordinance for Boothbay Harbor.

The Board of Appeals held a hearing on the appeal on November 19, 2020. (R. 1-6.) The Board of Appeals voted to deny the appeal. (*Id.*) The Board of Appeals held a second meeting, on November 24, 2020, during which they approved findings of fact and conclusions of law related to this decision. (*Id.*) The Board of Appeals held: (1) the 30-day period for appealing from the June 8, 2020, building permit had passed without a timely appeal, and that Appellants cannot collaterally attack that building permit through this Appeal from lifting of the Stop Work order; and (2) the new building as constructed did not constitute a new building. (*Id.*)

29 McKown and Mr. Wright timely filed this appeal of the Board of Appeals decision pursuant to M.R. Civ. P. 80B.

3

## STANDARD OF REVIEW

In an appellate capacity, the Superior Court reviews a municipality's decision directly for errors of law, findings not supported by the evidence in the record, or an abuse of discretion. *Tenants Harbor Gen. Store, LLC v. Dep't of Envtl. Prot.*, 2011 ME 6, ¶ 8, 10 A.3d 722. The party asserting an error in a Rule 80B appeal bears the burden of showing that error before the court. *Quiland, Inc. v. Wells Sanitary Dist.*, 2006 ME 113, ¶ 16, 905 A.2d 806. A decision is supported by substantial evidence "when a reasonable mind would rely on that evidence as sufficient support for a conclusion." *Phaiah v. Town of Fayette*, 2005 ME 20, ¶ 8, 866 A.2d 863 (quotations omitted) (citing *Forbes v. Town of Southwest Harbor*, 2001 ME 9, ¶ 6, 763 A.2d 1183). The court may not substitute its judgment for that of the board, and may not determine that a board's decision is wrong "because the record is inconsistent or a different conclusion could be drawn from it." *Phaiah*, 2005 ME 20, ¶ 8, 866 A.2d 863.

A party appealing a decision committed to the reasonable discretion of a State or local decisionmaker has the burden of demonstrating that the decisionmaker abused its discretion in reaching the decision under appeal. *See Davric Me. Corp. v. Maine Harness Racing Comm'n*, 1999 ME 99, ¶ 7, 732 A.2d 289, 293. An abuse of discretion may be found where an appellant demonstrates that the decisionmaker exceeded the bounds of the reasonable choices available to it, considering the facts and circumstances of the particular case and the governing law. *Sager v. Town of Bowdoinham*, 2004 ME 40, ¶ 11, 845 A.2d 567. It is not sufficient to demonstrate that, on the facts of the case, the decisionmaker could have made choices more acceptable to the appellant or even to a reviewing court. *Id.*

A planning board's interpretation of an ordinance is a question of law that the court reviews de novo. *Aydelott v. City of Portland*, 2010 ME 25, ¶ 10, 990 A.2d 1024 (citing

4

*Logan v. City of Biddeford*, 2006 ME 102, ¶ 8, 905 A.2d 293). The court must "examine the plain meaning of the language of the ordinance" and reasonably construe its terms "in light of the purposes and objectives of the ordinance and its general structure." *Stewart v. Town of Sedgwick*, 2002 ME 81, ¶ 6, 797 A.2d 27.

## DISCUSSION

Petitioners raise three arguments that the CEO's decision should be overturned. First, petitioners argue that the CEO erred by failing to require the subject building to undergo site plan review before lifting the stop work order. Second, petitioners argue that the CEO erred by failing to require a new building permit before lifting the stop work order. Finally, petitioners argue that fairness dictates that site plan review be conducted.

### 1. Site Plan Review

The Town Land Use Ordinance ("LUO") requires site plan review for, among other things:

A. The construction or placement of any new building or structure for commercial, office, industrial, recreational or institutional uses, including mobile retail establishments.

B. The expansion of an existing nonresidential building or structure, including accessory buildings, if the enlargement increases the total area for all floors within a five-year period by more than 500 square feet or 25% in total floor area, whichever is smaller.

Boothbay Harbor, Me., Code § 170-61(A), (B) (May 8, 2010). The parties dispute whether permit #20-41, issued June 8, 2020, should have required site plan review. However, because the deadline to appeal the decision to issue that permit has long since passed and petitioners are not challenging that permit, the issue is moot.

Petitioners are constrained by the fact that they are challenging the CEO's decision to lift the stop work order. This means they must find some authority which prohibits the CEO from lifting a stop work order under these circumstances. Petitioners argue that

5

while the replacement building was arguably not a "new building" requiring site plan review,[2] the building as constructed was different enough from the old building that it was a new building requiring site plan review. Thus, petitioners argue, the CEO should not have lifted the stop work order until site plan review had been conducted.

Harbor Crossing argues that the building it is constructing is not a "new building" within the meaning of the § 170-61(A) because it is a replacement for an existing structure. Harbor Crossing further argues that replacement structures only require site plan review if replacement building exceeds the triggers for site plan review provided by § 170-61(B), i.e., if the replacement building, when compared to the building it is replacing, "increases the total area for all floors within a five-year period by more than 500 square feet or 25% in total floor area, whichever is smaller."

The Town argues that the CEO was not required to determine whether the building under construction is a new building within the meaning of § 170-61(A) because he had made a conclusive determination to that effect when he issued the building permit. The Town further argues that the CEO only issued the stop work order because the building permit was issued contingent on Harbor Crossing not constructing a building that would trigger site plan review under § 170-61(B) and the CEO was concerned that Harbor Crossing might be exceeding that threshold. Therefore, the Town argues, once the CEO was satisfied that the replacement building did not increase the total area for all floors by more than 25%, he correctly lifted the stop work order.

§ 170-61(A) explicitly requires site plan review for the construction of a new building. The LUO prohibits the CEO from issuing building permits for "an activity

---

[2] As noted in footnote 1, the court disagrees with the suggestion that a replacement building is somehow not a "new building" within the meaning of the LUO.

which is part of a site or project requiring site plan review until such approval has been granted by the Planning Board." Boothbay Harbor, Me., Code § 170-11(C). However, the deadline to challenge permit #20-41 has long since passed. Despite petitioners' arguments to the contrary, any legal theory which relies upon the failure to conduct site plan review is an attack on the decision to issue the permit. Such attacks are outside the scope of this appeal.

Petitioners' argument is essentially that the CEO should have realized his mistake in issuing the permit upon issuing the stop work order and refused to lift it until site plan review was conducted. While such action by the CEO would have certainly been within his discretion, he was under no obligation to do so. The only question that pertains to the CEO's decision to lift the stop work order is if he abused his discretion by finding that Harbor Crossing's new plans still fell within the work permitted by permit #20-41. The court addresses this issue in the next section.

## 2. New Building Permit

Petitioners' other substantive argument is that the CEO was required to issue a new building permit to Harbor Crossing before lifting the stop work order. The LUO provides the following:

> Stop-work order. Should the Code Enforcement Officer find that information supplied to obtain a building permit is in error or the work permitted has been exceeded, the Code Enforcement Officer shall issue a stop-work notice revoking the permit. This action shall be accomplished by means of a verbal notification to the applicant or working crew or by posting of a stop-work notice at the entrance to the site or attaching the notice to the structure itself. This action shall be followed up by a written notice of violation as required herein.

Boothbay Harbor, Me., Code § 170-15(A). The LUO further states:

> Any alteration or deviation, change or addition in the original design, construction or layout of the subject area/location of a permit will cause a violation to this Land Use Code.

7

Boothbay Harbor, Me., Code § 170-11(A)(3). The LUO also provides that no building permit shall be issued if it is "known, alleged or suspected that a violation exists with or on any subject land, lot or structure(s), except that a permit may be issued to correct a violation as required." Boothbay Harbor, Me., Code § 170-11(A)(5).

Petitioners argue that the building Harbor Crossing actually constructed is a deviation from the original design permitted by the CEO. Thus, petitioners argue, the construction was a violation under § 170-11(A)(3), and required a new building permit to correct the violation. This argument makes sense as a matter of law, but it is contingent on the CEO finding that the construction was an alteration or deviation from the original design within the meaning of the ordinance. *See* Boothbay Harbor, Me., Code § 170-10(A) (granting CEO authority to investigate reports of violations and determine whether violations have occurred). The court reviews such determinations for abuse of discretion. *Tenants Harbor Gen. Store, LLC*, 2011 ME 6, ¶ 8, 10 A.3d 722.

The record indicates that the CEO issued the stop work order due to a suspected deviation from permit #20-41. The CEO's letter accompanying the stop work order states that he is issuing the order "due to a deviation from the building design permitted by [the CEO] on June 8, 2020, under building permit 20-41." (R. 66.) In his email correspondence with Mr. Hilton, representative of Harbor Crossing, the CEO indicated that his reason for issuing the stop work order was because he was concerned that Harbor Crossing's construction project possibly exceeded the threshold for expansions requiring site plan review under § 170-61(B). (R. 86-112.) The CEO's position in this email was that site plan review would be required if the new building plans would cross the thresholds in § 170-61(B). (R. 112.)

The CEO testified before the Board of Appeals that the new plans reflected only minor changes of the sort that can occur during construction. (R. 4.) The CEO testified

8

that the only change to the dimensions of the building was an increase in height from 16′ to 23′, and that the length and width measurements were consistent with measurements in the June 8, 2020 permit. (*Id.*) The CEO determined from examining the plans and asking the property owner that the modifications to the building would not include the addition of second floor storage or living space. (*Id.*) The CEO testified that the other changes were not substantial; the change in roof orientation was to avoid power lines with the taller roof and a decorative dormer was added. (*Id.*)

The Board concluded from this record that the minor changes made from the June 8, 2020 building permit were part and parcel of a "pretty typical design and build process." (*Id.*) Thus, they concluded that CEO did not have to issue a new building permit. This finding was not an abuse of discretion. The CEO clearly issued the stop work order because he suspected that Harbor Crossing's new plans might constitute a violation and require site plan review under § 170-61(B). Once he examined the site and received updated plans, the CEO concluded that the work fell within the work permitted by permit #20-41, meaning there was no violation. Upon so concluding, the CEO allowed construction to continue. On the record before the court, the CEO did not abuse his discretion by lifting the stop work order and allowing construction to continue.[3]

---

[3] Petitioners also raise an argument that fairness dictates that site plan review be conducted. In essence, petitioners complain that they did not have notice of the original permit, and that the changes during construction mean that the lifting of the stop work order should be viewed as a de facto amendment of the June 8, 2020 building permit, requiring site plan review. To the extent that petitioners are raising a notice issue, the Town's failure to give notice of permit #20-41 might be a justification for a late appeal of the that permit, but the decision to issue permit #20-41 is not the matter on appeal. Aside from that, the only argument petitioners raise is that they did not know what the project would entail until Harbor Crossing started building, which is sufficiently addressed under the other sections.

9

## CONCLUSION

The CEO did not err by determining the work performed by Harbor Crossing was within the scope of the work permitted under permit #20-41. The decision of the Town of Boothbay Harbor Board of Appeals is hereby AFFIRMED.

DATED: August 30, 2021

Daniel I. Billings, Justice
Maine Superior Court

10

Lincoln County
Date Filed:   12/18/20
Action: 80 B

Docket No. AP-2020-6

APPELLANT:

29 McKown LLC
29 McKown St.
Boothbay Harbor, Me 04538
315-6173
29mckown@gmail.com

Estate of Constance Wright
Chandler Wright, PR
35 McKown St.
Boothbay Harbor, ME 04538
207-592-6174

**Attorney:**

Kristin Collins
45 Memorial Circle
Augusta, ME 04330
207-791-3292
kcollins@preti.com

APPELEE:

Town of Boothbay Harbor
11 Howard St.
Boothbay Harbor, ME 04538
207-633-7712
jlatter@boothbayharbor.org
**Attorney:**
John Cunningham
Eaton Peabody
PO Box 9
Brunswick, Me 04011
207-729-1144
jcunningham@eatonpeabody.com

Party-in-Interest:
Harbor Crossing, LLC
227 Main St.
Damariscotta, ME 04543
207-380-3435

**Attorney for PII:**
Scott Anderson, Esq.
VERRILL
1 Portland Square
Portland, ME 04101-4054
sanderson@verrill-law.com