2005 ME 20

**Mitchell PHAIAH**

v.

**TOWN OF FAYETTE.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Oct. 5, 2004.

Decided: Jan. 28, 2005.

Keith R. Varner, Lipman, Katz & McKee, P.A., Augusta, for plaintiff.

David M. Sanders, Livermore Falls, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

CLIFFORD, J.

[¶ 1] The Town of Fayette appeals from the judgment of the Superior Court (Kennebec County, *Marden, J.*) vacating the decision of the Town of Fayette Board of Appeals denying a variance requested by Mitchell Phaiah. The Town contends that it did not, and was not compelled to find in Phaiah's favor on Phaiah's application for the variance. Because the findings of the Board of Appeals are ambiguous and in need of clarification, we affirm in part and vacate in part the decision of the Superior Court, and remand to the Superior Court for remand to the Board of Appeals for further findings of fact.

[¶ 2] In 1988, Robert McNeil and Stephen Jax became owners as tenants in common of a piece of property in the Town of Fayette known as Lot 41. In 1991, McNeil and Jax applied for and were granted a building permit by the Fayette Planning Board to construct a residential home on Lot 41 pursuant to the 1988 version of the Town Ordinances.

[¶ 3] Mitchell Phaiah purchased Lot 41 from McNeil and Jax by deeds dated 1991 and 1993, and recorded in 1993. The building permit that had been obtained by McNeil and Jax in 1991 expired for failure to begin construction within eighteen months of its issuance, which was soon after Phaiah purchased an interest in the property. *See* Fayette, Me., Shoreland Zoning Ordinance § XIII(B)(7)(a) (Apr. 4, 1988) ("Permits shall be valid for a period of 18 months. A reasonable amount of construction must be evident within this time to maintain the validity of the permit.").

[¶ 4] Phaiah made no attempt to develop Lot 41 until 2002, when he arranged for an engineering firm to determine what could be built on the property in compliance with Town Ordinances. Based on setback requirements revised in the 2000 version of the ordinance, the engineering firm concluded, "there appears to be no place on this lot to construct a home in conformance with current Town standards."

[¶ 5] In early 2003, Phaiah was denied a building permit by the Town Planning Board to construct a single family dwelling on Lot 41 with a footprint of 1800 square feet. The permit was denied because the

plan did not comply with revised road and shore setback requirements. Phaiah then applied to the Town Board of Appeals in April of 2003 for an "undue hardship dimensional variance" for road and shore setback requirements pursuant to 30–A M.R.S.A. § 4353(4) (Supp. 2004). Section 4353(4) provides:

> [T]he board may grant a variance only when strict application of the ordinance to the petitioner and the petitioner's property would cause undue hardship. The term "undue hardship" as used in this subsection means:
>
> A. The land in question can not yield a reasonable return unless a variance is granted;
>
> B. The need for a variance is due to the unique circumstances of the property and not to the general conditions in the neighborhood;
>
> C. The granting of a variance will not alter the essential character of the locality; and
>
> D. The hardship is not the result of action taken by the applicant or a prior owner.

30–A M.R.S.A. § 4353(4).

[¶ 6] Following a public hearing, the Board concluded that Phaiah had not shown that strict application of the ordinance would cause undue hardship, and denied Phaiah's application. In denying the variance, the Board used a preprinted form with options to circle the specific conclusions reached, with extra blank lines on which the Board was to "state the facts that support [its] decision that the subject property meets or does not meet each of the following criteria for this type of variance." In the section labeled "Conclusions of Law" on the preprinted form, with regard to each of the four criteria required by section 4353(4), the Board specifically found:

a. The land in question can/can not (circle one) yield a reasonable return unless a variance is granted [preprinted, with "can not" circled]: *However, applicant has proposed a project that the Board considers to be more than a reasonable return* [handwritten];

b. The need for a variance is/is not (circle one) due to the unique circumstances of the property and not to the general condition in the neighborhood [preprinted, with "is" circled]: *Wetlands on the property create additional setback limitations that are not unique to the general conditions of the neighborhood* [handwritten];

c. The granting of a variance will/will not (circle one) alter the essential character of the locality [preprinted, with "will not" circled]: *Other lots currently have structures as close or closer to the water and the road* [handwritten]; and

d. The hardship is/is not (circle one) the result of action taken by the applicant or a prior owner [preprinted, with "is" circled]: *The prior owners did not take advantage of an approval granted by the Town in 1991 which would have allowed for the development of the lot without the need for a variance from setbacks* [handwritten].

[¶ 7] Pursuant to M.R. Civ. P. 80B, Phaiah filed a complaint in June of 2003 in the Superior Court seeking review of the Board's denial of the variance. By order dated February 24, 2004, the court determined, contrary to the Town's contentions, that the Board found in favor of Phaiah as to the first three statutory requirements. The court also determined that the Board's denial of Phaiah's variance was based solely on the fourth statutory requirement—

Phaiah and/or his predecessors' failure to build on the lot prior to the expiration of the 1991 building permit—which constituted an error of law. The court vacated the decision of the Board and remanded the matter for issuance of Phaiah's variance. The Town timely appealed.

[¶ 8] The Town contends that the court erred in vacating the Board's decision to deny Phaiah's application for a variance. When, as here, the Superior Court acts in its appellate capacity, we review directly the decision of the Zoning Board of Appeals for "abuse of discretion, errors of law, or findings not supported by the substantial evidence in the record." *McGhie v. Town of Cutler*, 2002 ME 62, ¶ 5, 793 A.2d 504, 505; *Yates v. Town of Southwest Harbor*, 2001 ME 2, ¶ 10, 763 A.2d 1168, 1171. "Substantial evidence exists when a reasonable mind would rely on that evidence as sufficient support for a conclusion ...." *Forbes v. Town of Southwest Harbor*, 2001 ME 9, ¶ 6, 763 A.2d 1183, 1186. We do not make any findings other than those found explicitly or implicitly by the Board, and we do not substitute our judgment for that of the Board. *Perrin v. Town of Kittery*, 591 A.2d 861, 863 (Me.1991). "The Board's decision is not wrong because the record is inconsistent or a different conclusion could be drawn from it." *Twigg v. Town of Kennebunk*, 662 A.2d 914, 916 (Me.1995). Further, "[a] demonstration that no competent evidence supports the local board's findings is required in order to vacate the board's decision." *Thacker v. Konover Dev. Corp.*, 2003 ME 30, ¶ 8, 818 A.2d 1013, 1017.

[¶ 9] Phaiah was the applicant, and he had the burden of proving each of the four statutory requirements for a variance enumerated in section 4353(4). *See Perrin*, 591 A.2d at 863. We are bound, as is the Superior Court, to uphold the Board's decision "unless the evidence before the Board would compel a positive finding that the applicant had established undue hardship by *all four* of the criteria set forth in section 4353(4)(A)-(D)." *Id.* Thus, on appeal, it is Phaiah's burden to show that "the evidence compelled the Board to grant him a variance." *Twigg*, 662 A.2d at 916.

[¶ 10] The Town first contends that the Board was not compelled to find that Phaiah met his burden of establishing the fourth element of undue hardship: "The hardship is not the result of action taken by the applicant or a prior owner." 30–A M.R.S.A. § 4353(4)(D). With regard to this requirement in Phaiah's case, the Board's findings stated only that "[t]he prior owners did not take advantage of an approval granted by the Town in 1991 which would have allowed for the development of the lot without the need for a variance from setbacks." The Town apparently concedes that the only basis for the Board's conclusion that Phaiah created his own hardship was the fact that Phaiah and his predecessors did not act on the 1991 building permit. The issue, therefore, is whether, as a matter of law, the failure to act on a prior building permit is sufficient, by itself, to support a finding during subsequent application proceedings that the applicant created his own hardship, thereby disentitling him to a variance.

[¶ 11] Phaiah contends, and the Superior Court concluded, that there is no duty to build after having been granted a building permit. As the Superior Court noted, "The limitation on the life of a permit is a regulation based upon administrative requirements rather than substantive concerns.... The permit expired as a matter of administrative finality." Indeed, there is no authority for the proposition that a property owner must build on his property, even after having been granted a build-

ing permit. To hold otherwise would mean that failure to act on a previously issued building permit could operate to bar any subsequent attempts to build on the property. We have never held that an owner who is granted a building permit is required to build on the property. We therefore agree with the Superior Court that the Board committed an error of law in concluding that Phaiah's failure to build on Lot 41 pursuant to the 1991 permit constituted a self-created hardship precluding the grant of Phaiah's 2003 variance application, and we affirm that portion of the Superior Court's decision.

■■■ [¶ 12] We also conclude, however, that the Board's conclusion as to the first requirement of establishing hardship—that "[t]he land in question can not yield a reasonable return unless a variance is granted"—is ambiguous and requires clarification. *See* 30–A M.R.S.A. § 4353(4)(A). Specifically, although the Town did circle the language on the preprinted form indicating that Phaiah's property could not yield a reasonable return in the absence of a variance, the Town also wrote in next to that conclusion: "However, applicant has proposed a project that the Board considers to be more than a reasonable return." This handwritten conclusion is ambiguous in light of our decisions explaining the reasonable return prong. "The reasonable return prong of the undue hardship test is met where strict application of the zoning ordinance would result in the practical loss of all beneficial use of the land. [A] reasonable return is not the maximum return." *Perrin,* 591 A.2d at 863 (citations omitted). Thus, the preprinted portion of the Board's conclusions agreeing that the land in question cannot yield a reasonable return contradicts the handwritten portion indicating that nevertheless, the return sought by Phaiah is far more than the reasonable return permitted by the stat-

ute. Whether the Board intended the handwritten sentence following the preprinted language to constitute dicta, or a further conclusion and thus an independent basis on which Phaiah's variance could be denied, is ambiguous at best. We therefore vacate the Superior Court's judgment with regard to the reasonable return requirement and remand the matter for the Board to clarify its findings in that regard.

The entry is:

Judgment affirmed in part and vacated in part. Remanded to the Superior Court for remand to the Board of Appeals for further proceedings consistent with this opinion.