STATE OF MAINE                        SUPERIOR COURT
LINCOLN, ss.                          CIVIL ACTION
                                      DOCKET NO. WISSC-AP-2020-5

EUGENE MOLINELLI and            )
JUDITH MOLINELLI,               )
                                )
         Plaintiffs,            )
                                )    **DECISION AND ORDER ON**
    v.                          )    **PLAINTIFFS' 80B APPEAL**
                                )
TOWN OF BOOTHBAY,               )
                                )
         Defendant             )

## INTRODUCTION

This appeal arises out of an ongoing dispute between the Molinellis and the Town with respect to the Molinellis' right to remove vegetation in a shoreland zone on their neighbor's property. The Molinellis own a view easement on this neighboring property which they believe enables them to clear some vegetation to maintain. The Town believes otherwise, and has sought to stop the Molinellis from clearing this vegetation. This is the second time this dispute has resulted in an 80B Appeal reaching this court.

## BACKGROUND

The Molinellis own property at 66 Sawyers Island Road in the Town of Boothbay, Maine. (Pl.'s Br. at 1.) They purchased the property pursuant to a deed which granted them a fee interest in property on the eastern side of Sawyers Island Road and a view easement of the Sheepscot River across a portion of the property retained by the grantor on the western side of the road. (Pl.'s Br. at 1-2.) The deed conveying the easement explicitly states that no structure will be built, nor vegetation allowed to grow, so as to interfere with the view of the river from the Molinellis' property. (Pl.'s Br. at 2.)

The current owners of the burdened estate, the Wagners, came to own the property in 2012. (Def.'s Br. at 1.) There has been some dispute between the Molinellis and their current neighbors as to the nature and scope of the easement. (Def.'s Br. at 1-2.) This

1

dispute stems from an incongruity in their respective deeds. Where the Molinellis' deed expressly states that vegetation may not be allowed to grow so as to obstruct their view over the burdened estates, the language in the Wagners' deed only allows the Molinellis to cut down any tree over five feet that obstructs their view. *Id.*

In the Fall of 2017, the Wagners filed a complaint of unauthorized clearing of vegetation on their property with the Town. *Id.* The Code Enforcement Office ("CEO") issued a Notice of Violation to the Molinellis and the Wagners, alleging 11 Zoning Ordinance violations for the Molinellis' activities clearing vegetation on the Wagners' property. *Id.* The Molinellis challenged the notice before the Town of Boothbay Board of Appeals ("Board"). The Board vacated some of the violations, but upheld most of them. (Pl.'s Br. at 2.) The Molinellis then filed an 80B appeal with this court on July 3, 2018.

The court overturned most of the violations on appeal. *See* Order on Plaintiffs' Rule 80B Appeal (Docket No. LINSC-AP-18-5). Most important to this case, the court held that the Molinellis had not abandoned their view easement and therefore had a legally exempt nonconforming use under the zoning statutes. *Id.* The only violation the court upheld was based on the Mollinellis' failure to obtain a permit before conducting maintenance activities on their easement. *Id.* Neither party appealed and the order is now final.[1]

The Molinellis filed an application for a permit, pursuant to the court's order, on June 26, 2019. (Pl.'s Br. at 3.) Their initial application described the activity as simply restoring the view easement and included the relevant deed language, diagrams and

---

[1] While the action was pending, the Town entered into a voluntary agreement with the Wagners to replant vegetation on the property that the Molinellis cleared. (Def.'s Br. at 2.) This plan was implemented in June of 2018. *Id.*

pictures of the area to be trimmed. (R. at 318-352.) The CEO responded to this letter with a request for more specific information about, among other things, what vegetation would be removed and the exact scope of the easement referred to in the deed. (R. at 353-354.) The Molinellis supplemented their application several times with more details, though apparently never to the satisfaction of the Town. (Def.'s Br. at 3-4.) After 2 months of back-and-forth, the CEO issued a permit on September 4, 2019, which allowed the Molinellis to conduct certain vegetation removal actions subject to three conditions. (Pl.'s Br. at 3.) These conditions are as follows:

> **Condition #1:**
> Prior to the commencement of any vegetation trimming or removal, the Molinellis' arborist (or whoever else is performing the work) shall conduct an on-site pre-vegetation trimming meeting with the Code Enforcement Officer (CEO). At the time of this meeting, the CEO shall review the Molinellis' vegetation trimming plans with the arborist (or whoever else is performing the work), which review shall include a discussion regarding the following:
> > a) proposed techniques and methods of vegetation trimming
> > b) what is meant by cutting "at heights indicated by the 2007 photo" (*see* p. 3, Item 4 of revised application submitted on 8/22/19); and
> > c) what is meant by trimming "in accordance with Court directives" (*see* 5-6, Grid Tally Results of revised application submitted on 8/22/19).
>
> **Condition #2:**
> The area of sustained slopes (20% or greater) on the property adjacent to the Sheepscot River is part of the Resource Protection Area (RP). There shall be no cutting or removal of vegetation within the strip of land extending 75 feet inland from the high-water line of the Sheepscot River that is part of the RP. *See* Section 3.11.3.2.1.6 of the Zoning Ordinance.
>
> **Condition #3:**
> There shall be no cutting or removal of vegetation planted as part of the plan entitled "Shoreland Zone Buffer Vegetation Plan, prepared for 65 Sawyer Island Road, Boothbay, Maine" prepared by Sara Witte, Landscape Architect dated March 13, 2018 and on file at the Code Enforcement Office of the Town unless such cutting or removal of vegetation is first authorized by the CEO either at the on-site pre-vegetation trimming meeting or a subsequent on-site visit with the CEO.

(R. at 104.)

3

On October 1, 2019, the Molinellis filed an administrative appeal with the BOA challenging the conditions. (Pl.'s Br. at 4.) They argued that this court's previous opinion specifically barred conditions 2 and 3, and alternatively condition 2 could not be upheld because the property was not actually within the Resource Protection Area. They challenged condition 1 on the grounds that it was a unique, arbitrary and vague use of power that singled them out. A public hearing was held on the appeal on February 20, 2020. *Id.* The BOA voted 3-0 to uphold the first condition and 2-1 against upholding the other two conditions. *Id.* However, because the Zoning Ordinance (§ 1.9.3.3.2.2) requires a concurring vote of three members of the BOA to grant an appeal, all three conditions were upheld. (Def.'s Br. at 6.)

The Molinellis then brought this Rule 80B appeal challenging the decision of the BOA.

## STANDARD OF REVIEW

In an appellate capacity, the Superior Court reviews a municipality's decision directly for errors of law, findings not supported by the evidence in the record, or an abuse of discretion. *Tenants Harbor Gen. Store, LLC v. Dep't of Envtl. Prot.*, 2011 ME 6, ¶ 8, 10 A.3d 722. The party asserting an error in a Rule 80B appeal bears the burden of showing that error before the court. *Quiland, Inc. v. Wells Sanitary Dist.*, 2006 ME 113, ¶ 16, 905 A.2d 806. A decision is supported by substantial evidence "when a reasonable mind would rely on that evidence as sufficient support for a conclusion." *Phaiah v. Town of Fayette*, 2005 ME 20, ¶ 8, 866 A.2d 863 (quotations omitted) (citing *Forbes v. Town of Southwest Harbor*, 2001 ME 9, ¶ 6, 763 A.2d 1183). The court may not substitute its judgment for that of the board, and may not determine that a board's decision is wrong

4

"because the record is inconsistent or a different conclusion could be drawn from it." *Phaiah*, 2005 ME 20, ¶ 8, 866 A.2d 863.

A planning board's interpretation of an ordinance is a question of law that the court reviews de novo. *Aydelott v. City of Portland*, 2010 ME 25, ¶ 10, 990 A.2d 1024 (citing *Logan v. City of Biddeford*, 2006 ME 102, ¶ 8, 905 A.2d 293). The court must "examine the plain meaning of the language of the ordinance" and reasonably construe its terms "in light of the purposes and objectives of the ordinance and its general structure." *Stewart v. Town of Sedgwick*, 2002 ME 81, ¶ 6, 797 A.2d 27.

## DISCUSSION

Much of the dispute in this case concerns whether the Town is precluded from conditioning the Molinellis' permit by the court's previous decision. The Molinellis argue that conditions 2 and 3 are precluded by the doctrine of res judicata. They argue the Town is prohibited from imposing conditions that prevent them from maintaining their view easement as they have done historically. The Town replies that this issue concerns the scope of the Molinellis' easement, which it contends was not an issue in the previous case. In the alternative, the parties dispute whether those two conditions were rightfully upheld by the BOA.

As for the first condition, the Molinellis contend that it is an arbitrary and unconstitutional restriction of their property rights. The Town replies that the condition was a reasonable one.

I.    **The Town is Precluded from Imposing Conditions 2 and 3 by Res Judicata**

The Law Court has described the two prongs of the res judicata doctrine as follows:

The doctrine of *res judicata* is a court-made collection of rules designed to ensure that the same matter will not be litigated more than once. The doctrine has developed two separate components, issue preclusion and claim preclusion. Issue preclusion, also referred to as collateral estoppel, prevents the relitigation of factual issues already decided if the identical issue was determined by a prior

5

final judgment, and . . . the party estopped had a fair opportunity and incentive to litigate the issue in a prior proceeding. Claim preclusion bars relitigation if: (1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters presented for decision in the second action were, or might have been litigated in the first action. The collateral estoppel prong of res judicata is focused on factual issues, not claims, and asks whether a party had a fair opportunity and incentive in an earlier proceeding to present the same issue or issues it wishes to litigate again in a subsequent proceeding.

*Macomber v. MacQuinn-Tweedie*, 2003 ME 121, ¶ 22, 834 A.2d 131(internal quotations and citations omitted).

The parties disagree as to which prong of the res judicata doctrine is applicable to their dispute. The Molinellis argue that claim preclusion applies, the Town argues that collateral estoppel is the applicable doctrine.

It is clear that the first two requirements for applying claim preclusion are satisfied here. The issue, then, is whether the matters presented for decision were, or could have been, decided in the previous case. The Town argues that the court never considered the scope of the Molinellis' view easement in the previous case and instead only held that they had not abandoned their easement. The Molinellis point out that the court specifically stated that the easement allowed them to clear vegetation so the court must have reached this issue.

The Molinellis have the better argument here. The court's order took up the issue of whether the Molinellis had abandoned their view easement. When considering this, the court was quite explicit that it was considering the "steep slope" as part of that easement. Order on Plaintiffs' Rule 80B Appeal at 9 (Docket No. LINSC-AP-18-5). The Town never contested that construction of the easement. The court found that the view easement area was grandfathered from the vegetation clearing requirements of the Shoreland ZO.

6

Despite that, the Town now wishes to argue that the court never took up the scope of the easement. In other words, the Town argues that even though the court found that the Molinellis were exempt from the Shoreland ZO's requirements, it somehow never considered the scope of easement that created that exemption. Whether the Molinellis' easement covered the steep slopes and created an exemption from the vegetation clearing requirements of the Shoreland ZO was clearly a matter presented for decision in the previous action, even if the Town advanced a legal theory focused on reversion at that time. Not only *could* those matters have been decided in the courts prior order, they were.

Condition 2 bars cutting of vegetation on the steep slopes which clearly fall within the Molinellis' view easement. This condition cannot stand in light of the court's previous order. Condition 3 is perhaps an even more flagrant violation of this court's order, as it attempts to protect a replanting plan that was devised by the Wagners and the Town to remedy the very violations the court overturned last time. To say that this is somehow distinct because it arises under an agreement between the Town and the Wagners does nothing to abrogate the Molinellis' right to maintain their view easement. Condition 3, therefore, must also fall.

Were this court to apply collateral estoppel instead, the result would be the same. As stated previously, whether the easement covered the slope partially in dispute was an essential predicate of its ultimate holding that the Molinellis had not abandoned their right to clear vegetation under the easement. The parties therefore had a full opportunity and incentive to litigate the issue before. That they chose not to focus on it is no bar to the application of the doctrine.

The Molinellis' rights under their easement are well established and subject to a final court order. When the court upheld the permit requirement in the previous matter, it did not imagine that the Town would use it to try to achieve the result it was unable to

obtain in that litigation. The court hoped that the Town would work with the Molinellis to arrive at a resolution that respected their property rights while allowing the Town to minimize any potential harms that could arise from excessive clearing of vegetation. However, as the courts final order made clear, these permits may not interfere with the Molinellis' right to clear *some* vegetation reasonably necessary to maintain their view easement.

## II.     Condition 1 is Supported by Substantial Evidence and Not an Abuse of Discretion

Mr. Molinelli offered to concede the first condition at the February 20, 2020 BOA hearing as a potential compromise. Now, however, the Molinellis challenge this condition as an abuse of discretion, an error of law and unsupported by substantial evidence in the record.

The thrust of the Molinellis' argument against Condition 1 is that it imposes a unique condition that is unduly restrictive and unfairly singles them out. The Town argues that this condition did not actually single them out, as it only calls for a site visit, which the CEO testified is his usual practice prior to issuing a shoreland zone permit. The stated purpose of these visits is to ensure that the CEO knows precisely what the applicant plans to do before granting the permit.

An exercise of the of the police power to regulate for the general welfare that does not implicate a fundamental right is subjected to rational basis review. *State v. Haskell*, 2008 ME 82, ¶ 5, 955 A.2d 737. The Molinellis suggest that their case is analogous to *McNicholas v. York Beach Vill. Corp.*, 394 A.2d 264 (Me. 1978), where the law court struck down a $25 permit charge to dive in a park because there was no rational distinction between divers and other park users. *Id.* at 270. However, unlike *McNicholas*, the BOA heard competent evidence that the Molinellis were not treated substantially differently

8

with respect to this requirement. Furthermore, the CEO testified that his reason for imposing this condition was to ensure that he fully understood what work the Molinellis were going to undertake.

The CEO is directed by the Zoning Ordinance to consider many criteria when deciding whether to grant a permit. These criteria, laid out in § 3.6.1, include whether the proposed use will maintain safe and healthful condition; will not result in water pollution, erosion or sedimentation to surface waters and; will avoid problems associated with floodplain development and use. (R. at 498.) It is rational that the CEO may need a great deal of specific information in certain cases to make this decision. Requiring an in person meeting prior to vegetation maintenance to discuss the specifics is not arbitrary or an abuse of discretion.

However, the court wishes to reemphasize that these permit requirements *are not* carte blanche to rewrite the court's order. The Molinellis have a right to clear vegetation to maintain their easement. While the Town may seek an arrangement in line with the land use goals laid out in the permit criteria, it may not use these criteria to further attempt to frustrate the Molinellis' rights.

## CONCLUSION

For the foregoing reasons, Plaintiffs' 80B Appeal is GRANTED as to Conditions 2 and 3, and the court reverses and vacates the decision below as to those conditions. The 80B Appeal is DENIED as to Condition 1.

The Clerk is directed to incorporate this Order by reference in the docket in accordance with M.R. Civ. P. 79(a).

DATED: November 2, 2020

Daniel I. Billings
Justice, Maine Superior Court