STATE OF MAINE                                    SUPERIOR COURT
AROSTOOK, ss.                                     CIVIL ACTION
                                                  DOCKET NO. AP-20-4


ROGER PELKEY and
ROBIN LEGASSIE

              Petitioners

                                            DECISION AND ORDER

        v.

CITY OF PRESQUE ISLE

              Respondent


        Pending before the court is Petitioners Roger Pelkey and Robin Legassie's appeal of an

Order to Abate or Demolish Dangerous Building issued by Respondent, the City of Presque Isle

("City"), on June 4, 2020. Also pending are Petitioners' motion for sanctions and motion for stay.

For the following reasons, the Order to Abate is vacated and remanded for further proceedings.

Background

        Roger Pelkey ("Pelkey") and his daughter Robin Legassie ("Legassie") are the owners of

commercial real property located at 9 Allen Street, Presque Isle, Maine. (Resp't's Br. 1.) Since

some point in early 2019, counsel retained by the City and by Pelkey have been engaged in

negotiations to resolve issues with the property. (Pet'rs' Br. 2.) During these negotiations, Pelkey

undertook certain construction efforts on the property without obtaining permits. (A. 3-5.)

        The Code Enforcement Officer ("CEO") conducted an in-person inspection of the

property on May 7, 2019. (Resp't's Br. 1.) Following this inspection, he issued a Notice of

Violation on May 13, 2019, which alleged violations of the City's Property Maintenance Code,

Litter Ordinance, Land Use and Development Code, Health and Safety Code and State

Subdivision Law. (Resp't's Br. 1.) The City issued a "Stop-Work Order" and Pelkey was

1

directed to remove all garbage and obtain the necessary permits before correcting the alleged Code violations. (Resp't's Br. 1.)

The CEO conducted a second inspection on Augsut 26, 2019. (Resp't's Br. 1.) On August 29, 2019, the CEO sent Pelkey an additional Notice of Violation which alleged new Code violations, including removal of the Stop-Work Order. (Resp't's Br. 1.) Placards were posted at the property that identified the structure as condemned as dangerous and unsafe. (Resp't's Br. 2.)

The City and Pelkey reached a verbal agreement not to disconnect the power, as is standard procedure when a building is condemned, so that Pelkey could run power tools to conduct repairs. (A. 50.) As part of this agreement, Pelkey allegedly promised to not allow tenants to occupy the property and to conduct these repairs with proper permits and have them done by properly licensed contractors. (Resp't's Br. 2.) Pelkey only obtained one permit, on August 30, 2019, to construct a storage shed over an outside wood boiler on the property. (A. 50.) On January 29, 2020, the CEO received notice from EMERA Maine that there was constant power usage from three units in the building in excess of what would be used by construction equipment in a condemned building. (A. 50.) The records indicated that the use was continuous from August 29, 2019, for one of the units and dated from December 2019 for the other two. (A. 50.)[1]

On January 31, 2020, the CEO issued a third Notice of Violation that informed Pelkey that the power would be disconnected from the apartments and that the tenants must be removed immediately. (Resp't's Br. 2-3.) On February 10, 2020, the City Attorney wrote to Pelkey's

---

[1] Additional verification with the Fire/Ambulance Department and Police Department confirmed that multiple 911 calls had been made to the 9 Allen Street property, apparently confirming the presence of tenants.

2

attorney, Mr. Baldacci, informing him of the City's intention to pursue the Land Use Violations and advising him that the City was considering an action for the removal of a dangerous building pursuant to Title 17. (Resp't's Br. 3.) Attorney Baldacci replied on March 19, 2020, inquiring what would be necessary to have the power restored to the property. (Resp't's Br. 3.) The City Attorney wrote to Attorney Baldacci on March 20, 2020, and informed him that once a plan of repairs had been developed and submitted to address the numerous Code violations, the power would be restored. (Resp't's Br. 3-4.)

On April 2, 2020, the CEO sent a Notice of Hearing to both Pelkey and Legassie pursuant to 17 M.R.S. § 2051 to appear at the City Council on May 6, 2020. (Resp't's Br. 4.) They were both served on April 8, 2020. (Resp't's Br. 4.) In a letters dated April 14, 2020, both Pelkey and Legassie were notified that the City Council meeting scheduled for May 6 had been cancelled and rescheduled for June 3, 2020. (Resp't's Br. 4.) On April 28, 2020 each owner was served with a Notice of Hearing to be before the City Council on June 3, 2020. (Resp't's Br. 4.)

On April 29, 2020, the CEO and City Attorney filed a Land Use Citation and Complaint at the Presque Isle District Court, pursuant to M.R. Civ. P. Rule 80K and 14 M.R.S. § 4452. (Resp't's Br. 4.) Attorney Baldacci filed an Appearance and Answer on May 20, 2020. (Resp't's 4.) Service of the Rule 80K action was made on Pelkey on June 1, 2020. (Resp't's Br. 5.)

On June 3, 2020, the City Council conducted a hearing pursuant to 17 M.R.S. § 2851 and determined that the property was a dangerous building as defined by 17 M.R.S. § 2951.2-A. (Resp't's Br. 4.) Neither Pelkey nor Legassie was present at this meeting. (Resp't's Br. 4.) The City issued an Orders to Abate or Demolish Dangerous Building to Pelkey and Legassie on June 4, 2020. (Resp't's Br. 4.) On June 8, 2020, Legassie received service of the Rule 80K action.

3

(Resp't's Br. 5.) Due to delays imposed by COVID-19, the Rule 80K action has not yet been scheduled for a hearing.

Pelkey and Legassie commenced this action challenging the City's Order to Abate or Demolish Dangerous Building by Petition for Review pursuant to M.R. Civ. P. 80B dated July 2, 2020.

## Standard

In an appellate capacity, the Superior Court reviews a municipality's decision directly for errors of law, findings not supported by the evidence in the record, or an abuse of discretion. *Tenants Harbor Gen. Store, LLC v. Dep't of Envtl. Prot.*, 2011 ME 6, ¶ 8, 10 A.3d 722. The party asserting an error in a Rule 80B appeal bears the burden of showing that error before the court. *Quiland, Inc. v. Wells Sanitary Dist.*, 2006 ME 113, ¶ 16, 905 A.2d 806. A decision is supported by substantial evidence "when a reasonable mind would rely on that evidence as sufficient support for a conclusion." *Phaiah v. Town of Fayette*, 2005 ME 20, ¶ 8, 866 A.2d 863 (quotations omitted) (citing *Forbes v. Town of Southwest Harbor*, 2001 ME 9, ¶ 6, 763 A.2d 1183). The court may not substitute its judgment for that of the City Council, and may not determine that a decision is wrong "because the record is inconsistent or a different conclusion could be drawn from it." *Phaiah*, 2005 ME 20, ¶ 8, 866 A.2d 863.

## Discussion

Pelkey's appeal raises two issues. First, he contends that he was denied due process of law by the City by moving forward and issuing the Order to Abate or Demolish Dangerous Building without his presence at the hearing. Second, he contends that the city issuing this order without his attendance should be treated as a judgment of default in a court proceeding and he should be granted relief under M.R. Civ. P. 55(c) or 60(b).

4

A hearing before the City Council is not a court proceeding. This is not disputed by the parties. (Pl.'s Br. at 13.) The rules of civil procedure do not apply to these proceedings and can grant Pelkey no relief. Pelkey cites no authority indicating that proceedings of this kind must be held to the same standards as court proceedings. Furthermore, a city may consider a party's failure to appear in making its decision without that being a "default" in the sense contemplated by the rules. This line of argument has no basis and the court rejects it.

"This Court has long adhered to the principle that the Maine Constitution and the Constitution of the United States are declarative of identical concepts of due process." *Guardianship of Hughes*, 1998 ME 186, ¶ 8, 715 A.2d 919. "The due process clauses of the Maine and federal Constitutions guarantee due process before the state deprives a citizen of a property right." *Kirkpatrick v. City of Bangor*, 1999 ME 73, ¶ 13, 728 A.2d 1268. The process due to an individual will vary from case to case, and is determined through analysis of three factors:

> first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and administrative burdens that the additional or substitute procedural requirement would entail.

*Balian v. Board of Licensure in Medicine*, 1999 ME 8, ¶ 10, 722 A.2d 364 (quoting *Matthews v. Eldridge*, 424 U.S. 319, 335 (1963)).

It is quite clear that the City's action implicates an important private property interest of Pelkey and Legassie's. The City's interest in limiting the use of or eliminating dangerous buildings is similarly uncontested. The only issue that remains, then, is whether they were afforded the process they were due, including but not limited to "notice of the issues, an opportunity to be heard, the right to introduce evidence and present witnesses, the right to

respond to claims and evidence, and an impartial fact-finder." *Jusseaume v. Ducatt*, 2011 ME 43, ¶ 12, 15 A.3d 714.

The issue here is ultimately a narrow one. Did the City fail to afford Pelkey the process he was due by not taking additional steps to ensure that he and his counsel were properly aware of the two proceedings concerning his property? The record is clear that the City was aware of Pelkey's counsel and had been in contact with him in relation to the Rule 80K action before the notice of the rescheduled City Council meeting. It would have been a very minor burden to simply inform counsel of the hearing date, this could have been done via a simple email. With the benefit of counsel, Pelkey would have likely understood the significance of those proceedings and been able to attend in an effort to make his case. Given the importance of the opportunity to be heard to the due process analysis, the court finds that, in this particular point in time, during a pandemic, the City fell short of its due process obligations.

The court emphasizes the factual nature of due process questions in reaching this conclusion. "Due process will vary from case to case . . . to assure the basic fairness of each particular action according to its circumstances." *Beal v. Town of Stockton Springs*, 2017 ME 6, ¶ 15, 153 A.3d 768 (quotation omitted). The instability created by the COVID-19 pandemic, in particular, with its ever-shifting official restrictions, timelines and daily cancellations and reschedulings of public events, gives the court pause. Some additional notice is called for under these circumstances, especially where the City was already in communication with Pelkey's counsel. Thus, in this highly particular scenario, the court finds that Pelkey's due process rights were at a minimum impaired, and remands for a hearing where Pelkey may make his case before the City Council.

Because the court finds for the Plaintiffs without reaching oral argument, the outstanding motion for sanctions is moot. Similarly, because the court is remanding for further proceedings the pending motion to stay is moot.

The entry is

> The Decision of the City Council of Presque Isle is REVERSED and REMANDED for further proceedings. The City Council shall provide proper notice to Petitioners Roger Pelkey and Robin Legassie and their counsel of the hearing date and time.
>
> The motion for sanctions and the motion to stay are deemed moot.
>
> The Clerk is directed to enter this order into the docket by reference pursuant to M.R.Civ.P. 79(a).

Date: _____, 2020

Harold Stewart, II
Justice, Superior Court

7