STATE OF MAINE
KENNEBEC, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO-AP-21-0006

GEOFFREY S. STIFF, and
CAROLYN B. STIFF,
Petitioners

**DECISION ON APPEAL**
(RULE 80B)

V.

TOWN OF BELGRADE,
Respondent

and

STEPHEN C. JONES and
JODY C. JONES,
Parties-in-Interest

The matter before the court is a Rule 80B appeal by Gregory and Carolyn Stiff (the Stiffs) from a decision of the Belgrade Zoning Board of Appeals (ZBA), upholding a decision of the Belgrade Planning Board that approved the after-the-fact permit application of Stephen and Jody Jones (the Joneses) to construct a 2-story building on their property as an "accessory structure," pursuant to the Belgrade Shoreland Zoning Ordinance.

## BACKGROUND

The Stiffs and the Joneses are next-door neighbors on Sandy Cove Road in Belgrade. The Stiffs own the property at 324 Sandy Cove Road, which they purchased in 2005. The Joneses own the property at 326 Sandy Cove Road, which they acquired in 1995. This case involves the construction of a

building on the Joneses' property, which the Stiffs claim constitutes an illegal second residential dwelling unit.[1]

The Jones property is in Belgrade's Shoreland Zone. In April 2017, their contractor submitted a permit application to the Town's Code Enforcement Officer (CEO) to construct what was described as a "garage w/ laundry/Playroom." R. at 1. The permit was granted on April 13, 2017 by the CEO. In July of that year, a plumbing permit was applied for and granted. R. at 3.

Construction on the project began and was essentially completed by 2019. The structure that was built, however, was not as described in the 2017 permit application. Rather, the building actually constructed was a "2 story structure with garage, laundry room and playroom on 1st floor with one bathroom, and 3 bedrooms on 2nd floor with one bathroom."[2] R. at 22. On November 12, 2019, an after-the-fact or "as built" permit application was submitted by the Joneses. This permit application was required to be considered and acted on by the Belgrade Planning Board.

The Planning Board took up the permit application on November 21, 2019. The Joneses were represented by counsel and Mr. Stiff attended the meeting, as did other residents of Sandy Cove. R. at 134-135. The Stiffs' attorney submitted a memorandum to the Board outlining their concerns with the project. R. at 60. The Planning Board discussed the items that needed to be addressed for the Joneses' application to be considered complete. The

---

[1] The Stiffs and Joneses are involved in other litigation with each other concerning their respective properties. *See Stiff v. Jones*, KEN-RE-2019-57

[2] In October 2019, the Joneses and the Town, through its Town Manager, entered into a consent agreement because the CEO found that the existing septic system was inadequate for the new structure. R. at 71.

Board members also discussed conducting a site visit of the property. R. at 135.

Sometime in early 2020, the Joneses submitted an amended permit application. R. at 33 et seq. The Planning Board again took up the Joneses' amended application at its meeting on February 20, 2020. The Board heard comments from the attorneys for the Joneses and the Stiffs, as well as another neighbor on Sandy Cove. R. at 136. On June 18, 2020, the Planning Board continued its review of the Joneses' application and took additional comment from the attorneys. At that June 2020 meeting, the Planning Board reviewed the eight standards set forth in the zoning ordinance and found that all of them had been satisfied, except for Standard # 8, which required a forestry report. The Board voted to table the application until its next meeting in August. R. at 139. *See also* R. at 140-161.

The Planning Board next met and considered the Joneses' permit application on August 6, 2020. At that time, the Board voted to approve the application and issue the permit subject to conditions, including a prohibition on the "[i]nstallation of kitchen appliances and the preparation of meals . . . in the proposed structure." R. at 175.

The Stiffs appealed the Planning Board's decision to the ZBA. On September 23, 2020, the ZBA determined that the Planning Board "did not issue written findings of fact" to support its decision, and the ZBA remanded the matter to the Planning Board "to prepare a written decision with findings of fact and conclusions of law from the testimony, statements, evidence, documents and other materials that were submitted to it on the eight criteria in SZO Section 16.D, including any conditions of approval it has attached and the reasons for those conditions." R. at 8.

3

Upon remand, and at its October 1 and October 15, 2020 meetings, the Planning Board considered a draft set of Findings of Fact and Conclusions of Law prepared by the Town's attorney. R. at 10-14, 176-177, 178. On October 15, 2020, the Planning Board voted unanimously (4-0) to approve and adopt the draft findings and conclusions, which were signed the following day.[3] R. at 178, 14.

The ZBA met on November 18, 2020, determined that the appeal was complete and set December 16, 2020 as the date for the public hearing on the Stiffs' appeal. Following the public hearing, the ZBA voted to deny the appeal and its written decision was issued on January 13, 2021. R. at 15-21. The Stiffs filed their Rule 80B appeal to this court on February 25, 2021.

## STANDARD OF REVIEW

In an appellate capacity, the Superior Court reviews a municipality's decision directly for errors of law, findings not supported by the evidence in the record, or an abuse of discretion. *Tenants Harbor Gen. Store, LLC v. Dep't of Envtl. Prot.*, 2011 ME 6, ¶ 8, 10 A.3d 722. The party asserting an error in a Rule 80B appeal bears the burden of showing that error before the court. *Quiland, Inc. v. Wells Sanitary Dist.*, 2006 ME 113, ¶ 16, 905 A.2d 806. A decision is supported by substantial evidence "when a reasonable mind would rely on that evidence as sufficient support for a conclusion." *Phaiah v. Town of Fayette*, 2005 ME 20, ¶ 8, 866 A.2d 863 (quotations omitted) (citing *Forbes v. Town of Southwest Harbor*, 2001 ME 9, ¶ 6, 763 A.2d 1183). As the parties appealing the municipality's decision, the Appellants (in this case the Stiffs)

---

[3] It was not necessary for the Stiffs to file a new appeal from the Planning Board's October 15-16, 2020 decision, since the ZBA had previously determined that it would schedule an appeal hearing once the Planning Board had issued its Findings of Facts and Conclusions of Law after remand. R. at 8.

4

have the burden of "establishing that the evidence compels a contrary conclusion." *Leake v. Town of Kittery*, 2005 ME 65, ¶ 7, 874 A.2d 394. The court may not substitute its judgment for that of the municipal decision-maker on questions of fact and may not determine that an agency's decision is wrong merely "because the record is inconsistent or a different conclusion could be drawn from it." *Phaiah*, 2005 ME 20, ¶ 8, 866 A.2d 863. *See also Sproul v. Town of Boothbay Harbor*, 2000 ME 30, ¶ 8, 746 A.2d 368 ("The possibility of drawing two inconsistent conclusions from the evidence does not make the evidence insubstantial.").

Although a municipal board's interpretation of an ordinance is a question of law that the court reviews *de novo*, (*Aydelott v. City of Portland*, 2010 ME 25, ¶ 10, 990 A.2d 1024; *Logan v. City of Biddeford*, 2006 ME 102, ¶ 8, 905 A.2d 293), "we accord substantial deference to the Planning Board's characterizations and fact-findings as to what meets ordinance standards." *Olson v. Town of Yarmouth*, 2018 ME 27, ¶ 11, 179 A.3d 920. *See also Bizier v. Town of Turner*, 2011 ME 116, ¶ 8, 32 A.3d 1048; *Goldman v. Lovell*, 592 A.2d 165, 168 (Me. 1991); *Shapleigh v. Shikles*, 427 A.2d 460, 465 (Me. 1981); *Lawrence v. Zoning Bd. Of Appeals*, 264 A.2d 552, 554 (Conn. 1969).

The parties agree that the operative decision for judicial review is the October 15-16, 2020 ruling by the Planning Board, since the ZBA acted in an appellate capacity only.

## DISCUSSION

### A. Is there Substantial Evidence to Support the Planning Board Decision?

The Stiffs contend that the Planning Board's decision approving the "as-built" permit application of the Joneses was unsupported by substantial evidence in the record. Specifically, the Stiffs maintain that the Planning

5

Board erred as a matter of law when it approved the permit for the building as an "accessory use or structure."

According to Section 17 of the Belgrade Shoreland Zoning Ordinance, an "accessory use or structure" is

> A use or structure which is incidental and subordinate to the principal use or structure. Accessory uses, when aggregated shall not subordinate the principal use of the lot. A deck or similar extension of the principal structure or a garage attached to the principal structure by a roof or a common wall is considered part of the principal structure.[4]

R. at 130.

Of importance here is the meaning of the term "residential dwelling unit," which is:

> A room or group of rooms designed and equipped for use as permanent, seasonal, or temporary living quarters for only one family at a time and containing cooking, sleeping, and toilet facilities. The term shall include mobile homes and rented units that contain cooking, sleeping and toilet facilities regardless of the time-period rented. Recreational vehicles are not residential dwelling units.

R. at 133

The distinction between an accessory structure and a residential dwelling unit was important in the Planning Board's consideration and review of the Joneses' permit application because the Board explicitly prohibited the Joneses from installing any kitchen appliances or preparing any meals in the proposed structure. R. at 113. By adding those conditions, the Planning Board was expressly deciding that it was "not a approving a second residential dwelling unit." R. at 13.

---

[4] The term "principal structure" is defined to mean "a structure other than one which is used for purposes wholly incidental or accessory to the use of another structure or use on the same lot." R. at 131.

The Stiffs argue that the Joneses' second structure cannot be an accessory structure because of its size, number of rooms and its relationship to the principal dwelling unit already on the lot. The Stiffs emphasize that the Planning Board erroneously relied on and was misled by the square footage of the buildings as contained in the permit application submitted by the Joneses.

The Planning Board's ultimate determination that the Joneses' new building qualified as an "accessory structure" is entitled to substantial deference. As expressed by the Law Court in *Shapleigh v. Shikles*, 427 A.2d at 465, whether something is an accessory structure "may often present and depend upon questions of fact for initial administrative determination by building inspectors and zoning boards of appeals officials, even though the meaning of the terms or expressions in zoning ordinances is a question of law for the courts."

Belgrade's Shoreland Zoning Ordinance defines an accessory structure as one that "is incidental and subordinate to the principal use or structure." As an initial matter, the administrative record provides support for the conclusion that the members of the Planning Board personally visited the site of the Joneses' new building. The Board was able to assess whether the new building, providing garage and sleeping spaces for overflow family members and guests, was subordinate to the Joneses' principal structure. While the new structure is not a small shed or bunkhouse, the record provides evidentiary support for the Planning Board's conclusion that the new structure was incidental and subordinate to the principal residential building. Whether the actual square footage of the new structure was accurate on the application materials submitted by the Joneses, the Planning Board was able to evaluate both the new building and the existing principal structure to satisfy itself that

7

the new building was serving as an accessory use or structure to the original dwelling unit.

The caselaw cited by and relied on by the Stiffs does not compel a contrary result. The Connecticut case of *Lawrence v. Zoning Bd. of Appeals*, 264 A.2d 552 (Conn. 1969), affirmed the well-established proposition that a reviewing court cannot substitute its judgment on questions of fact for that of the municipal decision-maker. Similarly, *Shapleigh v. Shikles*, pointed out that the applicants in that case failed to exhaust their administrative remedies by not appealing from the revocation of their building permit to the zoning board of appeals.

The case of *Hopkinson v. China*, 615 A.2d 1166 (Me. 1992), is not on point because the zoning ordinance in that case specifically stated that an accessory structure could "not be used for residential occupancy." 615 A.2d at 1168. No such limitation appears in the Belgrade Shoreland Zoning Ordinance at issue here. Likewise, in *21 Seabran, LLC v. Town of Naples*, 2017 ME 3, ¶¶ 13-14, 153 A.3d 113, the ordinance at issue defined the term "residential dwelling unit" as does Belgrade and requires that it contain "cooking, sleeping and toilet facilities." Here, the Belgrade Planning Board expressly prohibited the Joneses from installing any kitchen appliances or preparing any meals in the new structure, thereby making sure that it would remain an accessory structure supporting the principal structure and would not become a second residential dwelling unit.

The court's review of the record satisfies it that the Planning Board's approval of the after-the-fact permit sought by the Joneses is supported by competent evidence. The record evidence might also support an inconsistent finding, but that does not mean that the record compels a result contrary to the one reached by the Planning Board.

## B. Did the Planning Board Make the Necessary Findings?

The Stiffs complain that the Planning Board's decision failed to clearly find that the Joneses' new building was an "accessory structure." While the Planning Board's written decision may not have expressly declared that the new building at 326 Sandy Cove Road was an "accessory structure," it is obvious from the Board's written decision that that was exactly what it found. The only way the Joneses' building could be approved was as an accessory structure. Moreover, a review of the record makes it apparent that the Board understood that a key question before it was whether the Joneses' building was a permissible accessory structure or an impermissible second residential dwelling unit. By prohibiting kitchen appliances and the preparation of meals inside the structure, the Planning Board was making it clear that it was approving the structure as an accessory use or building.

## C. Bias

The court finds the Stiffs' claim of bias to be without merit, based on its review of the entire record on appeal.

## CONCLUSION

The entry is:

The Petitioners' Rule 80B appeal is DENIED.

The clerk is directed to incorporate this order into the docket of this civil case by notation reference in accordance with M.R.Civ.P. 79(a).

Dated: February 22, 2023

William R. Stokes
Justice, Superior Court

Entered on the docket 2|22|23

9